PEOPLE v TAYLOR

Docket No. 51943. Submitted October 6, 1981, at Lansing.—Decided November 2, 1981.

Larry D. Taylor was convicted of first-degree murder and possession of a firearm during the commission of a felony, Oakland Circuit Court, Francis X. O'Brien, J. He appeals. *Held:*

1. The defendant was not deprived of his right to a speedy trial. The record reveals that any delays were attributable to the defendant, no prejudice to the defendant was occasioned by the delays, and, in addition, the defendant failed to assert his right and actually waived the right by requesting the appointment of a new attorney.

2. The defendant was not denied the effective assistance of counsel. The record fails to support the defendant's allegation that his attorney was inadequately prepared for trial.

3. The trial court's denial of the defendant's motion for a continuance did not deprive him of his right to counsel. The record reveals that the trial court properly exercised its discretion.

4. The defendant was not deprived of his right to a fair trial

REFERENCES FOR POINTS IN HEADNOTES
[1] 21A Am Jur 2d, Criminal Law §§ 654, 853.
[2] 21A Am Jur 2d, Criminal Law §§ 872, 873.
[3] 21A Am Jur 2d, Criminal Law § 853.
[4] 21A Am Jur 2d, Criminal Law § 985.
  58 Am Jur 2d, New Trial § 161.
  Modern status of rules and standards in state courts as to adequacy of defense counsel's representation of criminal client. 2 ALR4th 27.
[5] 17 Am Jur 2d, Continuance § 3.
  Withdrawal or discharge of counsel in criminal case as ground for continuance. 66 ALR2d 298.
[6] 29 Am Jur 2d, Evidence § 251.
[7-9] 5 Am Jur 2d, Appeal and Error § 553.
[8] 4 Am Jur 2d, Appeal and Error §§ 533, 535.
  75 Am Jur 2d, Trial §§ 906, 909.
[9] 5 Am Jur 2d, Appeal and Error § 815.
  75 Am Jur 2d, Trial § 907.

because of the prosecutor's examination of certain witnesses. The record does not support the defendant's allegations.

5. The record reveals that the evidence presented was sufficient to support the defendant's conviction of first-degree murder.

6. The record reveals that certain of the trial court's instructions to the jury relative to first-degree murder, while technically incorrect, constituted harmless error, ample evidence having been presented to support the defendant's conviction irrespective of the erroneous theory which may have been referred to in the allegedly erroneous instructions.

Affirmed.

1. CRIMINAL LAW — SPEEDY TRIAL.

A reviewing court, in determining whether a criminal defendant was denied his right to a speedy trial, should consider the length of the delay, the reasons for the delay, whether the defendant asserted the right in the trial court, and any prejudice which accrued because of the delay; the length of the delay is a triggering mechanism, and until there is a delay which is presumptively prejudicial it is not necessary to consider the other factors.

2. CRIMINAL LAW — SPEEDY TRIAL — BURDEN OF PROOF.

A delay of less than 18 months between the arrest of a defendant and the commencement of his trial may be sufficient to trigger an inquiry on appeal into the reasons for the delay, whether the defendant asserted the right in the trial court, and any prejudice which accrued because of the delay, however, the defendant bears the burden of showing that his rights were infringed; upon a delay of greater than 18 months the burden of showing a lack of prejudice passes to the prosecutor.

3. CRIMINAL LAW — SPEEDY TRIAL.

A delay in bringing a criminal defendant to trial which is attributable to a vigorous and aggressive pretrial defense tactic or which otherwise is attributable to the defendant should not be considered to be in derogation of the defendant's right to a speedy trial.

4. NEW TRIAL — CRIMINAL LAW — EFFECTIVE ASSISTANCE OF COUNSEL — APPEAL.

A criminal defendant is entitled to a new trial where his attorney did not perform at least as well as an attorney with ordinary training and skill in the criminal law and did not conscientiously protect the defendant's interests, undeflected by conflict-

ing considerations, or where his attorney committed a "big mistake" but for which the defendant would have had a reasonable likelihood of acquittal, and a defendant who attacks the adequacy of his trial counsel on appeal must demonstrate support for his claim in the record which excludes hypotheses consistent with a presumption of adequate representation.

5. CRIMINAL LAW — CONTINUANCES — APPEAL.

A trial court, in its discretion, may deny a criminal defendant's motion for a continuance, and on appeal a reviewing court, in determining whether the trial court abused its discretion, should consider whether: (1) the defendant asserted a constitutional right, (2) the defendant had a legitimate reason for asserting the right, (3) the defendant was guilty of negligence, (4) prior adjournments were made at the defendant's request, and (5) the defendant has demonstrated prejudice caused by the denial.

6. EVIDENCE — CRIMINAL LAW — RELEVANCE — RULES OF EVIDENCE.

Relevant evidence in a criminal case may be excluded by a trial court upon objection where the court determines that its probative value is outweighed by its prejudicial effect (MRE 401, 403).

7. APPEAL — PRESERVING QUESTION.

Failure to raise an objection or to request a cautionary instruction in a trial court precludes review of the matter on appeal, absent a showing of manifest injustice.

8. APPEAL — PRESERVING QUESTION — JURY INSTRUCTIONS.

Failure of a criminal defendant to object to proffered jury instructions during trial precludes reversal on the basis of the impropriety of the instructions on appeal absent manifest injustice.

9. APPEAL — JURY INSTRUCTIONS — TECHNICAL ERROR — SUFFICIENCY OF EVIDENCE.

A technically incorrect jury instruction will be held on appeal to constitute harmless error where a defendant fails to raise an objection in the trial court and the record reveals that ample evidence supporting the defendant's conviction was presented and there was no danger that the defendant was convicted under the erroneous theory.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief

Appellate Counsel, and *David W. King,* Assistant Prosecuting Attorney, for the people.

*Scafuri, Solomon & Barkovic,* for defendant on appeal.

Before: ALLEN, P.J., and M. J. KELLY and J. J. KELLEY,* JJ.

ALLEN, P.J. Defendant was tried by a jury and convicted of first-degree murder, MCL 750.316; MSA 28.548, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2), after he killed his wife with two shots from a deer rifle. He was sentenced to life imprisonment for the murder conviction and to the statutorily mandated two-year term for the firearm offense. He appeals as of right, raising six issues, none of which requires reversal.

Defendant's conviction arose from the killing of Sheila Taylor on November 7, 1979. Trial testimony established that defendant had been served with divorce papers at least six hours before the killing. That evening defendant entered the restaurant in which Sheila was working as a waitress and argued with her. Defendant left, but returned five to twenty-five minutes later with a deer rifle, which he aimed and fired at his wife. He walked up to her as she lay on the restaurant floor and shot her again, this time in her back.

Defendant's theory of the case was that he loved his wife, was depressed about the divorce papers, and planned to shoot himself, not his wife, when he entered the restaurant.

Defendant's trial was scheduled to begin on January 29, 1980. Trial was adjourned at that

---

* Circuit judge, sitting on the Court of Appeals by assignment.

time when defendant requested that a different attorney be appointed. Trial began, with defendant being represented by another attorney, on February 26, 1980.

We discuss the defendant's claims *seriatim.*

1. *Was defendant deprived of his right to a speedy trial?*

Defendant was arrested on February 18, 1979, and his trial did not begin until January 29, 1980, when it was adjourned at defendant's request until February 26, 1980. The delay between arrest and trial was therefore approximately 12 months.

Defendant argues that this delay deprived him of his constitutional[1] right to a speedy trial. We have examined the lower court record to determine whether, under the four-part balancing test enunciated in *Barker v Wingo,* 407 US 514, 530; 92 S Ct 2182; 33 L Ed 2d 101 (1972), defendant was deprived of a constitutional right. We conclude that he was not.

The four factors to be considered in determining whether a defendant was denied his right to a speedy trial are the length of the delay, the reasons for the delay, defendant's assertion of his right to a speedy trial, and the prejudice that has accrued due to the delay. *Barker, supra, People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972).

The United States Supreme Court has held that, "[t]he length of the delay is to some extent the triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance". *Barker, supra,* 530. While the United States Supreme Court did not establish any specified number of days that would act as a

---

[1] US Const, Am VI.

trigger, it left the states free to prescribe such a standard. *Barker, supra,* 522.

The Michigan Supreme Court had adopted 18 months as a time from which prejudice should be presumed before the United States Supreme Court spoke definitively about speedy trials in *Barker. People v Den Uyl,* 320 Mich 477; 31 NW2d 699 (1948). This presumptive period of prejudice was reconsidered and *Den Uyl* was cited with approval by the Michigan Supreme Court in the wake of *Barker. People v Collins,* 388 Mich 680, 690; 202 NW2d 769 (1972). *Collins* also noted, however, that the Michigan Legislature twice has adopted six months as an appropriate line for determining whether a defendant's right to a speedy trial has been violated. Accordingly, delays of less than 18 months have been held sufficient to trigger an examination of the remaining three factors. At 18 months, however, the burden of showing lack of prejudice passes to the prosecution. Here, where the delay was considerable, but less than 18 months, the defendant bears the burden of showing that his rights have been infringed. *Collins, supra,* 695, *People v Hall,* 391 Mich 175; 215 NW2d 166 (1974).

We have examined the trial record to determine the reasons for the delay, and we conclude that at least 9 of the 12 months between arrest and trial are attributable to actions of the defense. The four-month delay between February 27, 1979, and June 19, 1979, was due to defendant's request for a forensic center evaluation. The four-month period between August 9, 1979, and December 5, 1979, was consumed with four adjournments of the pre-trial conference, necessitated because defense counsel failed to appear. Finally, a month-long delay was occasioned by defendant's request for

substitution of counsel on the first day of trial, January 29, 1980.

We note that delays attributable to a vigorous and aggressive pretrial tactic should not be considered in derogation of the right to a speedy trial, *People v Goode,* 106 Mich App 129; 308 NW2d 448 (1981). Moreover, delays attributable to the defendant also should be excluded. *People v Missouri,* 100 Mich App 310; 299 NW2d 346 (1980). The four-month delay for a forensic center evaluation, the delays attributable to defense counsel's failure to appear, and the delay due to substitution of counsel cannot be considered in computing the extent of the delay. The time remaining when those delays are subtracted is a mere three months. It is noteworthy that during this time the record does not disclose a single request for a continuance on the part of the prosecution, nor does the record disclose any delay attributable to the court system. We find that defendant and his counsel were the cause of the delays.

A third factor, lack of demand for speedy trial, also weighs heavily against a finding that defendant was denied his right to a speedy trial, *Missouri, supra.* Defendant not only failed to assert that right, he waived it when he requested that a new attorney be appointed to represent him at trial.

Finally, we fail to see that any prejudice resulted from the delays, and defendant has not pointed to a single instance of prejudice on the record.

We conclude that defendant's claim that he was denied his right to a speedy trial is without merit.

2. *Was defendant denied the effective assistance of trial counsel?*

Defendant next argues that he was deprived of

the effective assistance of counsel. He claims on appeal that he was not interviewed by his trial counsel until the day trial actually commenced and further asserts that his attorney failed to contact potential defense witnesses. Defendant's argument repeats allegations that he made on the second day of trial, when he moved for a continuance, alleging that his attorney had made inadequate preparation for trial. The trial court, noting that defendant had raised the same arguments in moving for substitution of his first attorney, apparently disbelieved the defendant and denied the motion. This finding is entitled to deference on appeal *People v Bradley,* 54 Mich App 89, 95-96; 220 NW2d 305 (1974).

A convicted person is entitled to a new trial if his attorney does not perform at least as well as a lawyer with ordinary training and skill in the criminal law and does not conscientiously protect his client's interests undeflected by conflicting considerations. *People v Garcia,* 398 Mich 250, 264; 247 NW2d 547 (1976). In addition, a defense attorney who has adequate training may deprive an accused of a fair trial by committing a "big mistake", without which the accused would have had a reasonable likelihood of acquittal. *Garcia, supra, People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969). Lack of preparation for trial may be such that counsel's performance fails to meet the former test. *People v Strodder,* 394 Mich 193, 215; 229 NW2d 318 (1975), *People v Lewis,* 64 Mich App 175, 182-183; 235 NW2d 100 (1975). Failure to meet with a client until the day of trial has been considered one factor to be used in determining the adequacy of representation. *Id.,* 184-185, fn 14, *People v Hernandez,* 84 Mich App 1, 7; 269 NW2d 332 (1978).

Ordinarily, when a defendant attacks the adequacy of his trial counsel, he must be able to point to a lower court record that supports his claim and which excludes hypotheses consistent with the view that his trial lawyer represented him adequately. *People v Ginther,* 390 Mich 436, 442-443; 212 NW2d 922 (1973), *People v Means (On Remand),* 97 Mich App 641, 645; 296 NW2d 14 (1980), *People v Clemons,* 74 Mich App 448, 454-455; 253 NW2d 795 (1977). Here, defendant's allegations during trial lacked any indicia of veracity. We observe that defendant's trial counsel failed to join defendant's request for a continuance but instead stated that he was ready to proceed to trial as scheduled. We also note that the attorney's performance during trial indicates that he was indeed familiar with the case and was knowledgeable about the prosecution witnesses. In short, nothing in the record except defendant's accusations supports the defendant's assertions that his counsel was unprepared to proceed to trial.

We note that this Court has treated with some skepticism a defendant's repeated claims that successive counsel were unprepared to proceed with trial. *People v Krist,* 93 Mich App 425, 437; 287 NW2d 251 (1979).

Defendant attempted to enlarge the record available to this Court by making a motion for new trial, in which he raised the issue of competence of counsel. This motion was not filed, however, until after defendant filed his claim of appeal and jurisdiction over this case passed to this Court. The lower court therefore was unable to expand the record at that time and recognized that it lacked the power to do so.

Accordingly, we conclude that defendant is not entitled to a new trial on his unsupported allega-

tion that his trial attorney was inadequately prepared for trial.

3. *Was the defendant prejudiced by the trial court's denial of a continuance on the second day of trial?*

Closely related to defendant's claim that he was denied the effective assistance of counsel is his claim that he was deprived of his right to counsel when the trial court denied his motion for a continuance. In making this motion, defendant sought his second delay of trial for the purpose of asking his attorney to investigate further. The court denied the motion with little explanation.

The grant or denial of a request for a continuance generally rests in the discretion of a trial judge, although in criminal cases a somewhat stricter standard is used. *People v Charles O Williams,* 386 Mich 565, 572; 194 NW2d 337 (1972). In determining whether the trial court abused its discretion, five factors are useful criteria: (1) whether the defendant was asserting a constitutional right, (2) whether defendant had a legitimate reason for asserting that right, (3) whether defendant was guilty of negligence, (4) whether prior adjournments were at the defendant's request, and (5) whether defendant has demonstrated prejudice on appeal. *People v Wilson,* 397 Mich 76, 81; 243 NW2d 257 (1976). Applying these criteria to the case at bar, we find (1) defendant was asserting a constitutional right, the right of effective assistance of counsel, (2) defendant has not shown that he had a legitimate reason for asserting that right (see, issue 2), (3) defendant was guilty of negligence in waiting until the second day of trial to assert that right, (4) there were prior adjournments at the defendant's request, and (5) defendant has demonstrated no prejudice.

We conclude that the trial court was acting within its discretion in denying defendant's request, which was not joined by his attorney, for a continuance.

4. *Was defendant deprived of a fair trial by the prosecutor's vigorous examination of witnesses?*

Defendant claims that three lines of inquiry were highly prejudicial and deprived him of a fair trial. First, he argues that the prosecutor's questions about Valerie Strohm's visit to a neighbor, Kay Wolford, improperly permitted the jury to infer that Valerie had asked for a gun in the defendant's behalf on the evening of the killing. Valerie had testified that she went to the Wolford trailer, at the defendant's request, and asked about a motor, not a gun. Mrs. Wolford was asked about Valerie's statements to her, but she was not permitted to answer as the defense counsel objected to the admission of hearsay. The prosecutor attempted to elicit the same information without relying on hearsay but was unable to do so. No testimony about this gun was presented to the jury, and the court's admonition to refrain from areas that might involve hearsay was heeded. The prosecutor was acting within permissible limits when he tried to get in "through the back door" with nonhearsay statements that which was objected to on hearsay grounds.

The remaining two lines of inquiry that defendant claims were prejudicial involved the prosecution's attempt to discredit defendant's asserted defense that he loved his wife and intended to kill himself and not her on the night of the murder. The prosecution asked questions concerning defendant's relationships with other women and his beating of his wife in an attempt to discredit the defense theory. We observe that if the prosecution

had established that defendant had abused his wife or had a series of affairs, these facts would be relevant as they would tend to make the defendant's theory less probable. MRE 401. This evidence could be excluded, however, if it were properly objected to and the court found that its probative value was outweighed by the danger that it would unfairly prejudice the jury. MRE 403, *People v McKinney,* 410 Mich 413; 301 NW2d 824 (1981).

Evidence of defendant's "girlfriends" was first brought to the attention of the jury in the volunteered statement of a police officer that he staked out the defendant's "girlfriend's" trailer. There was no objection to this statement and, on cross-examination, the defense attorney established that the officer's conclusion about a girlfriend was based on unconfirmed rumors. In the absence of an objection or a request for a cautionary instruction, this issue has not been preserved for appellate review. *People v Provience,* 103 Mich App 69, 72; 302 NW2d 330 (1981). Here, where the volunteered remark was adequately explained on cross-examination, we do not believe manifest injustice occurred.

The prosecutor directly questioned the defendant about his involvement with two women during his marriage. The defendant denied dating either of these women, and the prosecutor did not attempt to rebut this testimony. The prosecution argues on appeal that it had a good-faith belief that defendant was involved with these women and asserts that the line of inquiry, while unsuccessful, was proper. We observe that defendant has not established that the prosecutor's questions were made in bad faith and that the line of inquiry was brief and was halted when defendant

responded in the negative. Accordingly, we find no error in the circumstances of this case. *People v Torrez,* 90 Mich App 120, 126-127; 282 NW2d 252 (1979), *People v Moss,* 70 Mich App 18, 34; 245 NW2d 389 (1976) (M. J. KELLY, J., *concurring),* aff'd sub nom *People v Tilley,* 405 Mich 38; 273 NW2d 471 (1979). Moreover, any danger of prejudice was dispelled when the court instructed the jury to disregard any reference to the women.

In a related argument, the defendant claims the prosecutor's inquiry into the defendant's relationship with 13-year-old Valerie Strohm was highly prejudicial. When the prosecutor asked if defendant had received "love letters" from Valerie while he was in jail, defendant answered no. A cautionary instruction was given by the judge, and we believe that was adequate to dispel any prejudice that may have been engendered by the question. We believe the question itself was proper, in light of testimony by a police officer about defendant's girlfriend's trailer and in light of the favorable, if somewhat confusing, testimony given by Valerie.

The third line of inquiry that defendant claims deprived him of a fair trial concerned defendant's possible abuse of his wife. The prosecutor asked defendant how often he beat his wife and defendant asked him to define what was meant by beating. Defendant then admitted that he struck his wife once while she was pregnant and that he pulled her hair during an argument while they were separated, but he denied forcing her to walk several miles while she was pregnant. The prosecutor's first question in this line of inquiry, "how many times did you beat your wife", was objected to, and the prosecutor then proceeded to lay a proper foundation for the remaining questions. As

these questions were not challenged on grounds of prejudice, and we believe they were relevant, we conclude that no reversible error occurred.

Defendant's remaining allegations of error do not merit extensive discussion. He argues that there was insufficient evidence of premeditation and deliberation to support a finding of first-degree murder. We disagree, finding that the uncontested evidence establishing that defendant procured a deer rifle and loaded it at least one hour before the shooting was ample to support a finding that defendant killed his wife with premeditation and deliberation. Finally, defendant contends that the court erred in instructing the jury that it could convict the defendant of first-degree murder if he created a high risk of death. Initially, we note that defendant did not object to the proffered instruction, so reversal is inappropriate unless manifest injustice occurred. *People v Jackson,* 98 Mich App 735; 296 NW2d 348 (1980). Secondly, while we observe that the court's instruction may have been technically incorrect, *People v Burgess,* 96 Mich App 390; 292 NW2d 209 (1980), there was no danger that the defendant was convicted under this erroneous theory as there was ample evidence that defendant aimed his rifle at his wife, then shot her a second time, at close range and in the back. Accordingly, any error that occurred was harmless.

Affirmed.