PEOPLE v SUCHY

Docket No. 73515. Submitted February 14, 1985, at Lansing.—Decided
    May 21, 1985. Leave to appeal applied for.

Defendant, Mary D. Suchy, was convicted by a jury in the
    Genesee Circuit Court of conspiracy to commit first-degree
    murder and arson, arson of a dwelling house, solicitation to
    commit first-degree murder, and first-degree murder, Philip C.
    Elliott, J. The facts indicate that four days prior to trial the
    defendant requested a continuance when her codefendants,
    Mary and Brian Crittenden, pled guilty, pursuant to plea and
    sentence bargains, to conspiracy to commit arson and second-
    degree murder and arson. The Crittendens named the alleged
    actual killer of defendant's husband, Larry Parks, and agreed
    to testify against the defendant at her trial. Defendant's motion
    for a continuance was denied and the prosecution's request to
    endorse the Crittendens as witnesses was granted. Defendant
    renewed her motion for an adjournment on the first day of trial
    and the motion was again denied. Defendant appeals alleging
    several errors. *Held:*

    1. The trial court abused its discretion by denying defen-
    dant's request for a continuance.

    2. The rights defendant was asserting are of constitutional
    magnitude. The guilty pleas and the endorsement of the Crit-
    tendens constitute legitimate reasons for the requested continu-
    ance. Defendant requested the continuance in a timely fashion
    and there is no reason to hold defendant guilty of any negli-
    gence in asserting the right. Defendant's motions for a continu-
    ance were not designed as a delaying tactic as opposed to a

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4-6, 8] 41 Am Jur 2d, Indictments and Informations § 60.
    81 Am Jur 2d, Witnesses § 2.
[3, 8] 21 Am Jur 2d, Criminal Law § 516.
[5] 21A Am Jur 2d, Criminal Law §§ 639 *et seq.,* 720 *et seq.,* 732 *et
    seq.,* 825 *et seq.,* 839, 967 *et seq.*
[7] 16 Am Jur 2d, Conspiracy § 40 *et seq.*
[9] 81 Am Jur 2d, Witnesses § 656 *et seq.*
    Credibility of witness giving uncontradicted testimony as matter for
    court or jury. 62 ALR2d 1191.

legitimate and reasonable request based upon the existing circumstances.

3. Defendant has demonstrated that she was prejudiced by the denial of the requested continuance. The endorsement of the Crittendens altered the defense posture. Defense counsel's zealous representation of his client does not negate the prejudice. The defendant need not point to a specific piece of evidence, or claim that new evidence has been discovered, in order to demonstrate prejudice on appeal.

4. There were no errors in the jury instructions or in the denial of defendant's motion for severence. The conduct of the trial judge did not demonstrate a prejudice against defendant or deny her a fair trial.

Reversed and remanded.

1. CRIMINAL LAW — PROSECUTING ATTORNEYS — WITNESSES.
   A prosecutor is required by statute to endorse the names of known witnesses on the information and provision is made for the endorsement of additional witnesses before or during trial (MCL 767.40; MSA 28.980).

2. CRIMINAL LAW — TRIAL — WITNESSES — LATE ENDORSEMENT.
   Permitting the late endorsement of a witness is a matter entrusted to the discretion of the trial judge who should exercise that discretion in consideration of the defendant's right to a fair trial.

3. CRIMINAL LAW — TRIAL — CONTINUANCES.
   The decision to grant a continuance in a criminal trial is governed by statute; such decision is within the discretion of the trial court (MCL 768.2; MSA 28.1025).

4. CRIMINAL LAW — TRIAL — WITNESSES — LATE ENDORSEMENT.
   The factors which should be considered in evaluating whether a trial court abused its discretion by refusing a defense request for a continuance following the late endorsement of a witness are: (1) whether defendant is asserting a constitutional right; (2) whether defendant has a legitimate reason for asserting the right; (3) whether defendant asserted the right in a timely fashion; (4) whether prior adjournments occurred at defendant's request; and (5) whether defendant has demonstrated prejudice.

5. CONSTITUTIONAL LAW — CRIMINAL LAW — WITNESSES — LATE ENDORSEMENT — ASSISTANCE OF COUNSEL — RIGHT OF CONFRONTATION — DUE PROCESS.
   The Sixth Amendment's guarantees of effective assistance of

counsel and right of confrontation and general principles of due process are implicated where there is a claim of lack of adequate time to prepare for trial following the late endorsement of a witness.

6. CRIMINAL LAW — TRIAL — WITNESSES — LATE ENDORSEMENT.

The quantum and type of evidence or information which is needed to demonstrate prejudice as a result of the denial of a continuance following the late endorsement of a witness is not capable of exact or precise definition; therefore, such determination must rest upon an evaluation of the facts of each individual case.

7. CRIMINAL LAW — CONSPIRACY — WITNESSES — CO-CONSPRIATORS — RULES OF EVIDENCE.

The statements of a defendant's co-conspirators are not admissible as evidence against the defendant until the prosecutor has independently established the existence of a conspiracy (MRE 801[d][2][E]).

8. CRIMINAL LAW — APPEAL — WITNESSES — LATE ENDORSEMENT — CONTINUANCES.

A defendant need not point to a specific piece of evidence, or claim that new evidence has been discovered, in order to demonstrate on appeal that prejudice resulted from the trial court's denial of the defendant's request for a continuance following the late endorsement of a witness.

9. CRIMINAL LAW — WITNESSES — CREDIBILITY.

The issue of an individual's guilt or innocence, as with matters of credibility, is a question for the jury's resolution in a criminal trial.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Edwin R. Brown,* Assistant Prosecuting Attorney, for the people.

*Philip J. Olson, II,* for defendant on appeal.

Before: D. E. HOLBROOK, JR., P.J., and ALLEN and E. M. THOMAS,* JJ.

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

PER CURIAM. Following a jury trial, Mary D. Suchy was convicted as charged of conspiracy to commit first-degree murder and arson, MCL 750.157a; MSA 28.354(1), arson of a dwelling house, MCL 750.72; MSA 28.267, solicitation to commit first-degree murder, MCL 750.505; MSA 28.773, and first-degree murder, MCL 750.316; MSA 28.548. On July 12, 1983, she was sentenced to life imprisonment for the murder and conspiracy convictions, from 13 to 20 years for the arson conviction and from 3 to 5 years imprisonment for the solicitation conviction. Defendant's motion for a new trial was denied. She appeals as of right and we reverse.

The charges giving rise to this prosecution involve a June, 1982, fire at defendant's home and the July, 1982, murder of her husband, Philip Suchy. Defendant was originally charged along with two codefendants, Mary and Brian Crittenden. Following the preliminary examination, they were arraigned in January of 1983, and trial was set for March. Because of a delay in preparing the transcript of the preliminary examination, a motion for a continuance, made by defendant Suchy and joined by Brian Crittenden, was granted. Trial was then scheduled for June 7, 1983.

On June 3, 1983, four days prior to trial, Mary and Brian Crittenden pled guilty, pursuant to plea and sentence bargains, to conspiracy to commit arson and second-degree murder and arson. In addition to naming the actual killer of Philip Suchy, they also agreed to testify against defendant Suchy at her trial. In exchange, the prosecutor would recommend a maximum sentence of 20 years on the conspiracy conviction.

At the conclusion of the plea proceedings, counsel for defendant Suchy requested a continuance asserting that he was not aware of the plea negoti-

ations until shortly before the Crittendens entered their pleas. Given this development, and the fact that the Crittendens had given extensive statements to the prosecutor, he stated that he needed time to investigate and to prepare for trial in light of this information. The prosecutor opposed the motion noting that over 50 witnesses had been subpoenaed for the trial. He stated that the only thing new in the case would be the Crittendens' statements and he represented that copies of those would be made available to counsel for defendant Suchy. The court denied the request for a continuance and granted the prosecution's request to endorse Mary and Brian Crittenden as witnesses.

Counsel renewed his motion for an adjournment on the first day of trial. He stated that he became aware for the first time at the plea taking that the Crittendens were claiming that defendant Suchy was the "mastermind" of several plots to burn her home and to kill her husband. The statements given by the Crittendens included information concerning times and places where meetings took place between themselves and Suchy concerning the arrangements for a killer and included the claim that defendant Suchy had directly paid the man who killed her husband. The identity of the alleged "hit man" was not known until the pleas were given. Although counsel had received copies of the statements on June 4, given the detail and length of those statements, he felt it was "almost impossible" to conduct the amount of required preparation in the four days preceding trial and that it could not be accomplished while he was in trial. Additionally, he felt that it was essential to Suchy's defense that trial be adjourned until the alleged hit man, Larry Parks, was either returned to Michigan or had been questioned by the prosecutor and by defense counsel.

In denying the motion, the court noted that, although efforts were being made to return Parks to Michigan, since he also was being charged with murder and conspiracy, it was doubtful that he would talk with the posecutor. While recognizing that the Crittendens' pleas would complicate the preparation for trial, the judge indicated that the possibility of such pleas could have been anticipated. Furthermore, over 50 witnesses had been subpoenaed for trial, trial had been adjourned on a prior occasion, and counsel had had ample opportunity since the January arraignment to prepare for trial.

While the prosecutor is required by statute to endorse the names of known witnesses on the information, provision is made for the endorsement of additional witnesses before or during trial. MCL 767.40; MSA 28.980. Permitting the late endorsement of a witness is a matter entrusted to the discretion of the trial judge who should exercise that discretion in consideration of the defendant's right to a fair trial. *People v Tann,* 326 Mich 361; 40 NW2d 184 (1949); *People v Harrison,* 44 Mich App 578; 205 NW2d 900 (1973); *People v Cyr,* 113 Mich App 213; 317 NW2d 857 (1982). Ordinarily, the late endorsement is permitted and, to prevent possible prejudice to the defendant, a continuance is granted. *People v Meadows,* 80 Mich App 680; 263 NW2d 903 (1977); *Harrison, supra.*

The decision to grant a continuance in a criminal trial is governed by statute. MCL 768.2; MSA 28.1025. As with late endorsement of witnesses, the decision is within the discretion of the trial court. *People v Wilson,* 397 Mich 76; 243 NW2d 257 (1976); *People v Powell,* 119 Mich App 47; 325 NW2d 620 (1982). As noted in *People v Eddington,* 77 Mich App 177, 187; 258 NW2d 183 (1977):

"The decision is a delicate task of preserving the defendant's right to a fair trial while preventing abuse or disruption of trial procedures to the prejudice of a speedy, orderly, and impartial criminal justice system."

The Michigan Supreme Court has enumerated several factors which should be considered in evaluating whether the trial court abused its discretion by refusing a defense request for a continuance following late endorsement of a witness. *People v Charles O Williams,* 386 Mich 565; 194 NW2d 337 (1972); *Wilson, supra.* Those considerations are: (1) whether defendant is asserting a constitutional right; (2) whether defendant has a legitimate reason for asserting the right; (3) whether defendant asserted the right in a timely fashion; (4) whether prior adjournments occurred at defendant's request; and (5) whether defendant has demonstrated prejudice. Our review of the record, in conjunction with the considerations listed above, leads us to conclude that the trial court abused its discretion by denying defendant's request for a continuance and that reversal is required.

Initially, it is clear that the rights defendant was asserting are of constitutional magnitude. In addition to the Sixth Amendment guarantee of effective assistance of counsel, general principles of due process are implicated where there is a claim of lack of adequate time to prepare for trial. See *People v Taylor,* 110 Mich App 823; 314 NW2d 498 (1981); *Wilson, supra.* Defendant also indicated that time was needed to prepare for the cross-examination of the Crittendens and, if possible, to contact and interview the alleged hit man, Larry Parks. Thus, defendant's Sixth Amendment right of confrontation was also involved.

Turning to the second factor set forth in *Wil-*

*liams,* we believe that the guilty pleas and the endorsement of the Crittendens, four days prior to trial, constitute legitimate reasons for the requested continuance. At that time, the case against defendant was significantly altered. For the most part, the testimony of the other witnesses, both at the preliminary examination and at trial, involved repetitions of what those witnesses had been told by the Crittendens. Thus, Mark Pratt testified that Mary Crittenden wanted a man killed because the "man's wife" was willing to put up the insurance money for an appeal for Mary Crittenden's brother and that the man had been killed. However, Pratt was never told the woman's name. Similarly, Earl Lord testified that he was told by the Crittendens that "a lady" had a plan to burn a house and shoot her husband but he never knew who was being discussed. It was not until the Crittendens entered their pleas and agreed to testify that direct evidence implicating defendant was presented. While counsel was prepared for the testimony of the other witnesses, confronting the former codefendants and co-conspirators presented a different situation. Contrary to the prosecutor's claim that the Crittendens merely filled in the details of the case, their statements and testimony added greatly to the available evidence, including naming the actual killer and directly identifying and implicating defendant in the crimes.

Defendant requested the continuance in a timely fashion and we find no reason to hold defendant guilty of any negligence in asserting the right. Although the possibility of a plea by one or both of the codefendants was possibly known to defense counsel, such abstract knowledge would not have aided his preparation unless he could have known what "story" they would tell.

The fact that the Crittendens provided new and different information previously unknown to either the prosecutor or defense counsel is revealed throughout the transcripts. For example, in his opening statement the prosecutor stated that he had recently learned that, in addition to defendant's plan to burn her home and to kill her husband, she also had a third plan to obtain money. That plan involved defendant's financing a drug buying trip by Brian Crittenden to California. Mary Crittenden testified that defendant had agreed to cash in her daughter's $10,000 savings certificate to finance the trip and Brian Crittenden testified that a rental car had been reserved. Moreover, although several witnesses could testify that the Crittendens had approached them about locating a hit man, prior to their pleas and statements, the existence of a "fourth conspirator" was uncertain and the name of the actual killer unknown. While introduction of evidence of Larry Parks's participation in these crimes was perhaps inevitable and unavoidable, the repeated references by the prosecutor to Parks's role and his relationship to both defendant and the Crittendens illustrates the relevance and importance of the Crittendens' pretrial disclosures.

The grant of a prior continuance to defendant is a relevant consideration under the fourth *Williams* factor. The March, 1983, adjournment was based upon the lack of a transcript from the preliminary examination. At that time, defendant executed a written waiver of her right to a speedy trial. There is nothing which illustrates that either of defendant's motions for continuance was designed as a delaying tactic as opposed to a legitimate and reasonable request based upon the existing circumstances.

A review of the first four factors enumerated in

*Williams* leads us to conclude that the trial court did abuse its discretion in denying defendant's motion for a continuance. Because we are also persuaded that defendant was prejudiced thereby, we reverse. *Wilson* and *Eddington, supra.* The quantum and type of evidence or information which is needed to demonstrate prejudice is not capable of exact or precise definition. Because there are no set rules or formulas for resolving the issue of prejudice, that determination must rest upon an evaluation of the facts of each individual case. What may constitute prejudice in one case may be wholly insufficient in another.

We find several factors to be relevant to our determination of prejudice in this case. In recognition of the fact that defendant was charged with several serious offenses involving, upon conviction, a mandatory life sentence, it is undisputed that counsel would require adequate time for preparation in order to effectively defend against those charges. Shortly before the Crittendens entered their guilty pleas, defendant's counsel had moved successfully for a jury trial separate from that of the Crittendens. At this time, the case against defendant, as developed at the preliminary examination, was largely circumstantial with no witnesses testifying directly to defendant's involvement in either the commission of the actual offenses or the conspiracy. Under MRE 801(d)(2)(E), the statements of the other co-conspirators would not be admissible as evidence against defendant until the prosecutor had independently established the existence of a conspiracy. It cannot be gainsaid that the endorsement of the Crittendens and the revelation of their statements, four days prior to trial, altered the defense posture. While defendant continued to assert her innocence of all charges, the case had shifted from a defense geared toward

those witnesses who had second-hand information from the Crittendens to a direct confrontation and credibility contest between defendant and the Crittendens.

While defense counsel did conduct a vigorous cross-examination of the Crittendens, we do not believe that that fact should weigh significantly in the balance. Although the extent and effectiveness of the examination of the late-endorsed witnesses is a consideration, *People v Umerska,* 94 Mich App 799; 289 NW2d 858 (1980); *Meadows, supra,* we do not find that counsel's zealous representation of his client negates the prejudice created by denial of the requested continuance. A standard which utilizes the vigor of the cross-examination as a method of evaluating and determining prejudice could lead to anomalous results. While a well-trained and prepared attorney may conduct a brilliant and extensive cross-examination of a recently endorsed witness, that is no assurance that the defendant's rights have been fully or adequately protected. That is especially true when, as here, the attorney represents that he is unable to do the investigation and preparation needed to meet the new development without additional time. It is interesting to note that the prosecutor's investigator also testified that because of the trial he was only able to "check out in a fashion" the statements of the Crittendens and had not been able to do an extensive ivestigation into the alleged hit man, Larry Parks.

Contrary to the prosecution's claim, we do not believe that defendant must point to a specific piece of evidence, or claim that new evidence has been discovered, in order to demonstrate prejudice on appeal. The requirement that the defendant show prejudice is derived from *People v Wilson,*

*supra.* In that case, the Supreme Court reversed the defendant's conviction because the trial court had refused to grant the defendant a reasonable continuance in order to prepare for the testimony of expert witnesses who were endorsed on the day of trial. The Court held that an adequate demonstration of prejudice had been shown because the defendant *"might* have lost a possible defense * * * by his *alleged inability* to adequately cross-examine" the expert witnesses. 397 Mich 83. (Emphasis added.) Concurring, Justice Levin stated that reversal was properly ordered, not because defendant had demonstrated prejudice, but because there was reason to believe that he "may have been prejudiced". *Id.*

We find that defendant has, within the meaning of *Wilson,* demonstrated prejudice. On several occasions during the course of the lower court proceedings, trial counsel expressed his inability to thoroughly investigate the factual details contained in the lengthy statements given by the Crittendens. Appellate counsel has additionally pointed to several areas in which time was needed for preparation and investigation. In recognition of the fact that prior to the pleas the evidence pointed to a belief that Brian Crittenden was the killer of Philip Suchy, the revelation of the identity of a fourth conspirator, Larry Parks, was a surprise. Testimony of the Crittendens placed defendant in direct contact with Parks. Although they were vague about the date, the Crittendens both testified that defendant met Parks in a local bar and discussed the arrangements for the murder of Philip Suchy. The meeting took place in the afternoon and lasted at least 30 minutes. Other persons were present in the bar but no other witnesses were produced to testify to this meeting. Brian and Mary Crittenden also testified that

defendant accompanied them to the same bar when another payment was made to Parks.

Other testimony equally damaging to defendant was brought forward through the Crittendens and was not substantiated by other witnesses or evidence. They testified that, in accordance with one of the early plans to obtain money, Brian Crittenden had reserved a rental car for the California trip. Had defense counsel been granted a reasonable continuance to investigate the substance of the Crittendens' statements, information may have been discovered which would have been used to attack the credibility of the Crittendens or to support defendant's claim that they had fabricated their stories to obtain the benefit of their plea bargains. See *People v Powell, supra.*

Additionally, while Larry Parks may initially have been unwilling to discuss his participation in these events, it is not inconceivable that through investigation some information could have been ascertained about him, his whereabouts on the dates and times of the alleged meetings and the murder, and his relationship with the Crittendens. Moreover, although this information was not available at the time counsel moved for a new trial, Parks has apparently now testified that he never met or spoke with defendant. Such evidence would have supported defendant's claim that she had never been at the L'il Abner Bar and had never met anyone named Larry Parks or anyone fitting the description given by the Crittendens.

Given our resolution of defendant's threshold claim, we will address the remaining issues only to the extent necessary to avoid error on retrial. We see no valid reason or justification for the prosecutor's questioning the defendant concerning her belief in the guilt of Mary and Brian Crittenden and Larry Parks or the truthfulness of other wit-

nesses' testimony. As with matters of credibility, it is clear that the issue of an individual's guilt or innocence is a question for jury resolution. See, *e.g., People v Drossart,* 99 Mich App 66; 297 NW2d 863 (1980); *People v Parks,* 57 Mich App 738; 226 NW2d 710 (1975). Especially in a case such as this, where credibility is critical, the prosecutor should refrain from asking the defendant for her opinion on such subjects. See, also, *People v Buckey,* 133 Mich App 158; 348 NW2d 53 (1984). The prosecutor should also avoid injecting issues broader than defendant's guilt or innocence into the trial, such as abstaining from innuendo that it is necessary to convict defendant in order to bring Larry Parks to justice.

While the brief reference to a polygraph examination by Mary Crittenden appears to be an isolated comment, we trust that on retrial the witness will be cautioned about the impropriety of such a remark. Also, any references to the misconduct report from Marquette Prison should await its admission into evidence.

Our review of defendant's remaining issues discloses no error in the jury instructions or in the denial of defendant's motion for severance. Similarly, we find that the conduct of the trial judge did not demonstrate a prejudice against defendant or deny her a fair trial.

Defendant's convictions are reversed and we remand for a new trial.