PEOPLE v STORCH

Docket No. 94180. Submitted October 5, 1988, at Marquette. Decided
April 17, 1989.

Arthur Earl Storch was convicted of three counts of first-degree
criminal sexual conduct and one count of kidnapping following
a jury trial in Alger Circuit Court, William F. Hood, J. Defen-
dant appealed, raising claims of instructional error by the trial
judge, prosecutorial misconduct and ineffective assistance of
counsel.

The Court of Appeals *held:*

1. Evidence at trial indicated several inconsistencies in the
victim's identification of defendant. Although the victim picked
out defendant from a corporeal lineup, the color of defendant's
eyes is different from that which she remembers her assailant
to have, and the victim failed to pick out defendant from a
"voice" lineup. Additionally, the victim had earlier failed to
pick out another individual from a corporeal lineup conducted
after she identified the individual as her assailant from a
photograph of the individual. In view of the inconsistencies in
identification, the trial judge erred when instructing the jury
regarding identification by omitting, despite the objection of
defendant, paragraph (5) of CJI 7:7:01, which states: "You may
also consider any occasions on which the witness failed to
identify defendant, or made an identification or description that
conflicted with his identification of defendant at trial."

2. The credibility of defendant's sister, Vickie Long, and her
boyfriend, John Baird, witnesses presented by defendant in
support of his alibi defense, was improperly attacked by the
prosecutor through use of evidence indicating that both Vickie
Long's estranged husband and John Baird had been convicted
of criminal sexual conduct. Such evidence was irrelevant and
the additional use of such evidence at the prosecutor's closing

REFERENCES

Am Jur 2d, Criminal Law §§ 984-987; Trial § 855.

Necessity of, and prejudicial effect of omitting, cautionary instruc-
tion to jury as to reliability of, or factors to be considered in
evaluating, eyewitness identification testimony—state cases. 23
ALR4th 1089.

argument was unfairly prejudicial to defendant. The prosecutor also improperly stated at closing argument that defendant had fabricated his alibi with the aid of two friends despite those individuals' testimony to the contrary at trial.

3. The record in the two remands of this case supports defendant's claim that he was denied effective assistance of counsel at trial due to counsel's lack of adequate time to prepare for trial. The court-appointed attorney who represented defendant at trial had been a last-minute substitute for the attorney initially appointed to represent defendant. A continuance of trial was in order. However, the record is not clear as to why a continuance was not obtained to allow counsel additional time for preparation. If the failure to obtain a continuance was the result of counsel's failure to request one, then the failure was a serious mistake, absent which there was a reasonable probability that the jury would have had a reasonable doubt as to defendant's guilt.

Reversed and remanded for a new trial.

1. CRIMINAL LAW — JURY INSTRUCTIONS — IDENTIFICATION.

Where evidence at trial indicates inconsistent identification of the defendant by the complaining witness and the defense requests that the jury be instructed that the jury may consider any occasion on which the witness failed to identify the defendant or made an identification or description that conflicted with his identification at trial, it is error for the trial judge to refuse to instruct the jury as requested. (CJI 7:7:01).

2. CRIMINAL LAW — ASSISTANCE OF COUNSEL.

The standard for determining whether a defendant had effective assistance of counsel in a criminal trial is that defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law, and, secondly, counsel must not make a serious mistake but for which the defendant would have had a reasonably likely chance of acquittal.

3. CRIMINAL LAW — ASSISTANCE OF COUNSEL.

In addition to the Sixth Amendment guarantee of effective assistance of counsel, general principles of due process are implicated where there is a claim that counsel lacked adequate time to prepare for trial.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *Mark E. Luoma*, Prosecuting Attorney, and *Thomas C. Johnson* and *To-*

*natzin M. Alfaro Garcia,* Assistant Attorneys General, for the people.

*Mark Peter Stevens* and *Thomas P. Casselman,* for defendant on appeal.

Before: GRIBBS, P.J., and CYNAR and J. T. KALLMAN,* JJ.

J. T. KALLMAN, J. Defendant appeals as of right from his conviction by jury of three counts of first-degree criminal sexual conduct, MCL 750.520b(1)(c); MSA 28.788(2)(1)(c), and one count of kidnapping, MCL 750.349; MSA 28.581. Defendant was sentenced to concurrent terms of life imprisonment for the CSC convictions and a fifteen-to forty-year term of imprisonment for the kidnapping conviction. We reverse and remand for a new trial.

On December 19, 1985, at 8:00 P.M., the seventeen-year-old victim noticed a parked car while walking in an alley in Munising, Michigan, on her way to a friend's house. As she passed the car, a man jumped out, accosted her and said, "Get in the car or I'll kill you." After the victim unsuccessfully attempted to flee, the man struck her and dragged her into the car. The assailant drove for a while and forced the victim to engage in three separate sexual acts in the car. At trial, the victim identified defendant as her assailant.

Defendant presented a defense of alibi. Defense witnesses testified that defendant and a friend spent December 19, 1985, in the Gladstone-Rapid River area, a considerable distance from Munising, and visited defendant's parents' farm until 6:30 or 6:45 P.M. Defendant left his friend at 7:30 P.M. to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

go to his girlfriend's home, arriving at her home at 7:45 P.M.

Defendant raises several issues on appeal. While certain errors which occurred, standing alone, may not have required reversal, we hold that the cumulative effect of certain instructional errors, prosecutorial misconduct and the ineffective assistance of counsel deprived defendant of a fair trial. *People v Smith,* 363 Mich 157, 164; 108 NW2d 751 (1961); *People v Kvam,* 160 Mich App 189, 200-201; 408 NW2d 71 (1987).

I

In instructing the jury regarding identification of defendant as the perpetrator of the crime, the trial court omitted paragraph (5) from CJI 7:7:01.[1] That paragraph states:

[1] CJI 7:7:01 states:

(1) One of the issues in this case is the identification of defendant as the one who committed the crime. The prosecution has the burden of proving beyond a reasonable doubt not only that the crime was committed, but also that the defendant was the one who committed it.

(2) The value of identification testimony depends on the witness's opportunities to observe the offender at the time of the offense and to make a reliable identification later.

(3) Factors affecting the witness's opportunity to observe the offender at the time of the offense include: the length of time available for observation, whether the witness had occasion to see or know the offender before the incident, the distance between the witness and offender, the light or lack of light at the time, the witness's state of mind at the time of the offense, and any other circumstances affecting the witness's opportunity to observe the person committing the offense.

(4) Factors affecting the reliability of any identification of the defendant made after the offense include: the length of time between the occurrence of the crime and the identification, the circumstances surrounding the identification, the witness's certainty or lack of certainty about the identification, the witness's state of mind at the time of the identification, and any other circumstances bearing on the reliability of the identification.

(5) [You may also consider any occasions on which the witness failed to identify defendant, or made an identification or description that conflicted with his identification of defendant at trial.]

You may also consider any occasions on which the witness failed to identify defendant, or made an identification or description that conflicted with his identification of defendant at trial.

In response to defense counsel's objection to the deletion of the paragraph, the trial court expressed its belief "that the substance of the standard jury instruction was given and appropriate and that nothing further was required." We cannot agree.

The crucial question in determining whether an omitted portion of a criminal jury instruction requires reversal is whether the instruction as a whole adequately informed the jury of its responsibilities. *People v Young,* 146 Mich App 337, 339; 379 NW2d 491 (1985). The committee notes regarding CJI 7:7:01 indicate that the fifth paragraph should be given, upon request, when supported by the evidence.

Evidence was introduced at trial that less than one month after the occurrence of the crime (prior to defendant's arrest), the victim, while at a friend's house, saw a blurred picture of her friend's boyfriend, Jim McGee. The victim, who did not know McGee, notified the police that she thought McGee was her assailant. A lineup was held which included McGee. Officer Joseph Beebo testified that the victim stated to him before the lineup that, based on the picture, she was "positive" McGee was her assailant, but, at the lineup,

_____

(6) [You should examine the witness's identification testimony carefully. You may consider whether the testimony is supported in whole or in part by other evidence or circumstances, because if it is so supported it may be more dependable. If the identification testimony is not supported by other evidence or circumstances, it still may be used for conviction, as long as you believe the testimony and you find that it proves beyond a reasonable doubt defendant's identity as the person who committed the crime.]

the victim declined to identify McGee or anyone else as the perpetrator of the crime. One and one-half months later, after seeing a TV news story about the arraignment of defendant on a sex crime in Delta County, the victim notified the police that defendant was the man who had raped her. A lineup was held with defendant participating. While the victim was initially confused by the fact that defendant's eyes were blue, in contrast to her remembering and having described her assailant as having brown or hazel-green eyes, the victim eventually identified defendant at the lineup as her assailant.

Subsequently, a "voice lineup" took place where the victim heard each suspect in the lineup make a statement similar to that spoken by her assailant. The victim identified a voice belonging to a suspect other than defendant. At trial, the victim explained the discrepant identification resulted from the fact that the suspect she had identified had "put more stress in the words" than the other suspects.

The evidence regarding the victim's prior inconsistent identifications supported the giving of paragraph (5) of CJI 7:7:01. This Court has previously upheld the fairness of CJI 7:7:01 in response to a defendant's argument that the instruction is biased in favor of the prosecution.

> Defendant first argues that the trial court should have supplemented the standard jury instruction, CJI 7:7:01, since it is biased in favor of the prosecution. We feel that CJI 7:7:01 in proper cases properly states the law and is not biased in favor of the prosecution. This instruction adequately informs the jury of the problems with eyewitness identification testimony and the factors that may affect an eyewitness's identification of defendant. *People v Anderson*, 389 Mich 155, 172-

180; 205 NW2d 461 (1973). The instruction also emphasized that the prosecutor has the burden of proof on this issue. Since the instruction is accurate, there is no need to supplement it to make it more favorable toward defendants. [*Young, supra,* pp 338-339.]

Here, where the evidence supported the giving of paragraph (5), the trial court gave an instruction which was unfairly biased in favor of the prosecution and failed to adequately inform the jury of the appropriate factors to consider in evaluating the victim's identification of the defendant by giving CJI 7:7:01 without the benefit of paragraph (5).

II

The testimony of defendant's sister, Vickie Long, and her boyfriend, John Baird, corroborated defendant's alibi. During examination of one of the police officers assigned to defendant's case, the prosecutor elicited from the officer testimony that Vickie's estranged husband, Lonnie Long, was incarcerated on the night of the crime. On cross-examination of Vickie, the prosecutor elicited an admission that Lonnie Long had been incarcerated at Marquette Prison prior to December 19, 1985, that Vickie was divorcing Lonnie, and that Vickie had met John Baird through correspondence while he was incarcerated with Lonnie at Marquette. Over defendant's objection, the prosecutor impeached Baird's testimony by reference to his previous guilty plea to two counts of second-degree criminal sexual conduct.

When defendant initially objected to the relevancy of testimony regarding Lonnie Long, the prosecutor explained that the purpose of the testimony was to exonerate Lonnie by establishing his

unavailability on the night of the offense. The prosecutor explained that this was necessary because the victim testified that her abductor had told her his name was "George Long." The prosecutor's explanation was a subterfuge. There was no rational connection between the pseudonymous "George Long" and Vickie's incarcerated husband. Even if the assailant had used the name "Long," there was no danger of confusing Lonnie with that name, since the jury had no knowledge of Lonnie's existence until the prosecutor elicited from the police officer the irrelevant testimony that Lonnie was defendant's brother-in-law. The testimony regarding Lonnie Long was irrelevant, potentially confusing, and unfairly prejudicial to defendant.

We also believe the admission into evidence of Baird's prior criminal sexual conduct conviction was erroneous. Under the then-applicable version of MRE 609,[2] impeachment of the witness with evidence of a prior conviction was permissible only where the court determined the probative value of admitting the evidence on the issue of credibility outweighed its prejudicial effect and articulated on the record the factors considered in making its determination. Defense counsel objected at trial to disclosing the nature of Baird's prior conviction on the ground that the jury would potentially find defendant guilty of criminal sexual conduct because his sister's boyfriend had been guilty of the same crime. The evidence of Baird's prior conviction was potentially unfairly prejudicial, and since the prior conviction did not involve dishonesty,

[2] Under MRE 609, as revised in *People v Allen,* 429 Mich 558, 606-608; 420 NW2d 499 (1988), reh den 430 Mich 1201 (1988), the "bright-line" aspect of the amended rule applies to witnesses called by the prosecution and nondefendant witnesses called by the defense. Under that test, Baird's prior criminal sexual conduct convictions would be inadmissible for impeachment purposes. However, the bright-line test does not apply to this case since trial occurred prior to March 1, 1988.

false statement or theft, it was minimally, if at all, probative on the issue of credibility. Moreover, the trial court failed to articulate on the record the factors considered in deciding to allow the impeachment.

The admission of irrelevant evidence was compounded by the prosecutor's unfairly prejudicial use of the evidence in his closing argument. The prosecutor stated:

> And then there is Vickie Long, the sister of the defendant, another biased witness. That's her brother she's talking about. She's the one who is divorcing one sex offender to spend her days with another one . . . .

Assuming for the sake of argument that evidence of Lonnie Long's and Baird's convictions was admissible for the purposes initially proposed by the prosecutor (to "dispel" confusion regarding the assailant's use of the name Long and to impeach Baird's credibility), the prosecutor's use of the evidence in closing argument exceeded the scope of the proposed use and was wholly improper. *People v Dalessandro,* 165 Mich App 569, 581-582; 419 NW2d 609 (1988).

The improper discrediting of Vickie Long's character was not the only example of improper argument by the prosecutor. The prosecutor called to the stand two friends of defendant, Clausen and Gerou. The prosecutor inquired of both witnesses whether defendant had requested their participation in fabricating an alibi. In spite of the prosecutor's repeated attempts to refresh the witnesses' recollections by asking if they had so indicated to police investigators, the witnesses both denied defendant's ever having asked them to fabricate an alibi. Nonetheless, in his closing argument, the

prosecutor (at least partially) based his suggestion that defendant had fabricated an alibi on the prosecutor's questions to Clausen and Gerou. A prosecutor may not argue facts material to the case which are not in evidence. *Dalessandro, supra,* p 581. The prosecutor's suggested inference was improper.

### III

Some troubling issues are raised in connection with defendant's claim that he was deprived of the effective assistance of counsel at trial. Defendant sought and obtained a remand of this case to the trial court for a *Ginther*[3] hearing. Upon motion by defendant, this case was remanded a second time to allow defendant to introduce into evidence testimony of an expert witness.

Defendant has the burden of showing he was denied effective assistance of counsel. *People v Stubli,* 163 Mich App 376, 379; 413 NW2d 804 (1987). In *People v Garcia,* 398 Mich 250, 264-266; 247 NW2d 547 (1976), reh den 399 Mich 1041 (1977), our Supreme Court established a bifurcated test for ineffective assistance of counsel claims. First, defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law. Secondly, even though the first test is satisfied, counsel must not make a serious mistake but for which the defendant would have had a reasonably likely chance of acquittal.

In *Strickland v Washington,* 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the United States Supreme Court set forth the test for determining claims of ineffective assistance of counsel brought under the Sixth Amendment. The defendant must establish that counsel's performance

---

[3] *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).

was deficient and that the deficiency prejudiced the defense.

Attorney William Carmody was originally appointed as counsel to defendant in this matter. Trial was scheduled for April 28, 1986. On the Wednesday preceding the scheduled date for trial, Carmody learned that he was to be called by the prosecution as a rebuttal witness. According to one of the prosecution witnesses, on the date of the charged offense the witness had an appointment with Carmody to discuss an unrelated suit pending against the witness, and defendant accompanied the witness to Carmody's office for the appointment. The prosecution planned on calling Carmody to identify his appointment book which indicated an appointment with the witness for 3:30 P.M. on December 19. The testimony was contrary to defendant's alibi and placed defendant closer to the scene of the crime.

On that Wednesday, Attorney James Conaway, who was representing defendant in connection with a criminal sexual conduct charge in another county, was contacted concerning his willingness to substitute as counsel in the instant case. Conaway indicated he could (if defendant acquiesced), but advised that he would not be able to even look at defendant's file until Friday. Conaway testified at the *Ginther* hearing that he felt from the trial court a sense of urgency to go forward with the trial as scheduled, but also testified that he advised the trial court that he would not proceed unless he felt adequately prepared. The attorneys and the trial court ultimately decided to proceed with the jury selection on the scheduled date of trial (April 28), but to delay the commencement of trial until Thursday, May 1, to allow Conaway two extra days to prepare. After the substitution, Carmody continued to assist Conaway with certain

trial preparation. During jury voir dire Carmody sat at counsel's table with Conaway to assist in jury selection because Carmody, unlike Conaway, was familiar with local names and people.

Defendant's contention that he was denied the effective assistance of counsel is based on three claims: (1) lack of adequate preparation on the part of Conaway; (2) undue prejudice created by the jury's having seen Carmody at the defense table during voir dire and later having seen Carmody testify contrary to defendant's alibi; and (3) Conaway's history of alcohol abuse. In its two opinions denying defendant's motion for new trial, the trial court ruled: (1) that Conaway, a former assistant prosecutor and experienced defense lawyer, was adequately prepared for trial; (2) no prejudice occurred as a result of Carmody's participation in jury selection and his testifying on behalf of the prosecution; and (3) there was no showing that Conaway was either intoxicated at trial or that problems with alcohol rendered his performance deficient.

Evidence introduced at the *Ginther* hearings showed that Conaway had a serious alcohol-abuse problem at the time of this trial. However, the evidence also showed that Conaway did not take a drink on the mornings prior to trial or during the trial itself, although in the evenings following trial (which included meetings with the defendant and other trial preparation), Conaway testified he probably had four to six mixed drinks. The expert witness presented by defendant on remand testified regarding the effects of alcohol use and abuse on various physiological and psychological abilities, although the expert had never personally examined Conaway. We are unwilling to find that the performance of an attorney suffering from an alcohol-abuse problem is per se deficient. Further-

more, here, the trial court did not err in finding that defendant failed to show that Conaway's problems with alcohol rendered his representation of defendant deficient.

However, contrary to the trial court's finding, we believe defendant sustained his burden of showing inadequate preparation by counsel for trial. In addition to the Sixth Amendment guarantee of effective assistance of counsel, general principles of due process are implicated where there is a claim of lack of adequate time to prepare for trial. *People v Suchy,* 143 Mich App 136, 142; 371 NW2d 502 (1985), lv den 424 Mich 855 (1985). Defendant was charged with three counts of first-degree criminal sexual conduct, crimes carrying life sentences, and one count of kidnapping, also a very serious charge. Over twenty witnesses were called during the four-day trial. While Conaway testified that he felt adequately prepared to go to trial, he testified to a number of things he normally would want to do prior to commencement of a trial which the time constraint prevented him from doing in this case, including Conaway's inability to interview certain witnesses prior to trial and the fact that his review of prosecution exhibits was limited to copies contained in Carmody's file, several of which were marginally legible. Of particular significance is the fact that the jury was selected prior to much of Conaway's preparation. Selecting a jury is a critical part of the trial process. As Conaway himself testified, it is very important for counsel to know and have prepared for his or her case prior to voir dire. Conaway further testified that with more time he would have found someone other than Carmody to assist him in the jury selection, thereby avoiding the possible confusion and potential for unfair prejudice caused by Car-

mody's appearance first with the defense and later as a prosecution witness.

The record is not clear as to why a continuance was not obtained to allow Conaway appropriate time to prepare for trial. If this was a result of a decision by the trial court, that decision was wrong. The defense was in no way responsible for the last-minute need for substitution of new counsel, and a continuance was in order. *People v Charles O Williams,* 386 Mich 565; 194 NW2d 337 (1972). If the failure to obtain a continuance was the result of Conaway's failure to request one, then that failure was a serious mistake, absent which there was a reasonable probability that the jury would have had a reasonable doubt respecting guilt.

IV

We conclude that the denial of effective assistance of counsel to defendant combined with the prosecutor's misconduct and instructional error by the trial court deprived defendant of the fair trial guaranteed to him by the federal and state constitutions. Defendant's convictions are reversed and this case is remanded for a new trial. Our disposition of this case renders it unnecessary to consider the remaining issues raised by defendant on appeal.

Reversed and remanded for a new trial.