PEOPLE v CETEWAYS

Docket No. 88773. Submitted September 4, 1986, at Detroit. Decided
November 4, 1986. Leave to appeal denied, 428 Mich —.

Kajana Ceteways pled guilty to armed robbery and to possession
of a firearm during the commission of a felony, pursuant to a
plea-bargain agreement wherein an additional charge of assault
with intent to commit murder was dismissed by the prosecution
in exchange for defendant's plea. The Oakland Circuit Court,
David F. Breck, J., at a second sentencing hearing, sentenced
defendant to consecutive prison terms of from fifteen to thirty
years for armed robbery and two years for felony-firearm, with
credit for 215 days already served. The first sentencing hearing
was adjourned after sentence was imposed to enable the proba-
tion department to prepare an updated presentence report for
defendant's review. Defendant appealed.

The Court of Appeals *held:*

1. The circuit court did not err in declining to hold a hearing
to determine whether defendant's court-appointed counsel
should be replaced. A full adversary hearing regarding defen-
dant's claim that his counsel had pressured him into pleading
guilty despite defendant's repeated assertions of innocence is
unnecessary, in light of the fact that the circuit court had
elicited testimony from both defendant and his counsel regard-
ing the claim and concluded that counsel's presentation of the
facts relating to the claim was more credible.

2. Defendant was not denied effective assistance of counsel.
Continued representation of defendant by his court-appointed
counsel at the motion to withdraw defendant's guilty plea and
at the second sentencing hearing after defendant had indicated
he did not wish to be represented by his court-appointed

REFERENCES

Am Jur 2d, Criminal Law §§ 485, 504, 510, 511, 538, 982.

Accused's right to sentencing by same judge who accepted guilty
plea entered pursuant to plea bargain. 3 ALR4th 1181.

Indigent accused's right to choose particular counsel appointed to
assist him. 66 ALR3d 996.

See also the annotations in the Index to Annotations under Sen-
tence and Punishment.

counsel did not result in any conflict of interest between defendant and counsel. Denial of defendant's motion to withdraw his guilty plea would have been proper regardless of what counsel could have said, and defendant in fact received a less severe sentence than was indicated at the first sentencing hearing.

3. The charge of assault, which the prosecution dismissed in exchange for defendant's guilty plea, related to police officers upon whom defendant's codefendants fired while the defendants were driving away from the scene of the armed robbery. References to the assault of the armed robbery victim made by the probation officer, the circuit court, and the prosecution at sentencing did not relate to the dismissed assault charges and therefore did not contravene the prosecution's promise to dismiss the charge of assault against defendant.

4. The circuit court had not vacated, but, in fact, retained jurisdiction to modify, the sentence it initially imposed on defendant at the first sentencing hearing by deciding to wait two weeks for defendant to review an updated presentence report. Defendant was therefore not entitled to withdraw his guilty plea after the first sentencing hearing.

5. Defendant's sentence, while it exceeded the sentencing guidelines, was within the statutory maximum, and the circuit court adequately explained its departure from the guidelines. The sentence was not excessive and did not shock the judicial conscience of the Court of Appeals.

Affirmed.

1. CRIMINAL LAW — RIGHT TO COUNSEL — SUBSTITUTION OF COUNSEL.

An indigent defendant, entitled to the appointment of a lawyer at public expense, is not entitled to choose his lawyer; he may, however, become entitled to have his assigned lawyer replaced upon a showing of adequate cause for a change in lawyers; when a defendant asserts that his assigned lawyer is not adequate or diligent or asserts that his lawyer is disinterested, the trial court must elicit testimony from the attorney and the defendant in order to assess any issues of fact, and state his findings and conclusion; a full adversary proceeding, with counsel representing both the attorney and the defendant, is not required.

2. CRIMINAL LAW — APPEAL — GUILTY PLEAS — PLEA AGREEMENT.

The prosecution does not break its promise to dismiss an assault charge against a defendant, which was given to induce the defendant to plead guilty to other related offenses, where

references are made at sentencing regarding another assault but not the assault relating to the charge which was dismissed.

3. CRIMINAL LAW — SENTENCING — GUILTY PLEAS — WITHDRAWAL OF GUILTY PLEAS.

    A sentencing judge who states on the record his intention to modify a sentence he imposed on a defendant who pled guilty retains jurisdiction to resentence the defendant at a subsequent hearing; the defendant's right to withdraw his guilty plea is not thereby revived unless the judge expressly vacates the sentence which he imposed at the earlier hearing.

4. CRIMINAL LAW — SENTENCING — SENTENCING GUIDELINES — APPEAL.

    A sentence which exceeds that which is recommended by the sentencing guidelines will not be disturbed by the Court of Appeals where reasons for the sentencing judge's departure from the sentencing guidelines are indicated on the record, and where the sentence is not so excessive as to shock the judicial conscience of the Court of Appeals.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Richard H. Browne,* Assistant Prosecuting Attorney, for the people.

*Gerald M. Lorence,* for defendant on appeal.

Before: M. J. KELLY, P.J., and BEASLEY and CYNAR, JJ.

BEASLEY, J. Defendant, Kajana Ceteways, pled guilty, pursuant to a plea-bargain agreement, to armed robbery, MCL 750.529; MSA 28.797, and to possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424 (2). The Oakland Circuit Court sentenced defendant to the mandatory two years in prison on the felony-firearm conviction and to not less than fifteen nor more than thirty years in prison on the armed robbery conviction, the two sentences to be served

consecutively. Defendant was given credit for 215 days already served. Defendant appeals as of right.

In addition to the charges to which he pled guilty, defendant was originally charged with assault with intent to commit murder, MCL 750.83; MSA 28.278. The assault charge was based on the fact that codefendants Richard and Jimmy Lee Carter had shot at police from their car while Ceteways was driving them away from the scene of the robbery. In the course of the robbery itself, the victim was badly cut in the neck, but this was not alleged in the assault information. Trial on all three counts was scheduled for December 3, 1984. On November 29, 1984, just prior to trial, defendant pled guilty in exchange for the prosecutor's agreement to dismiss the assault charge. The prosecutor made the following statement regarding the plea bargain:

> Your Honor, it's a result of our investigation that Mr. Ceteways was driving the car when the assault with intent to murder took place and that it was plainly Richard Carter, also Jimmy Carter who fired the shots at the police officers. Pursuant to conferring with the officer in charge, he's agreed that Mr. Ceteways should be proceeded upon against the armed robbery charge and the possession of firearm during the commission of a felony and that since he did not fire any shots at the officers, that we would not proceed upon him on the Assault with Intent to Murder as an aider and abettor, should he plead guilty to the Armed Robbery and Possession of a Firearm. Therefore, that's the sum and substance of any plea negotiations. If he pleads guilty as charged to Armed Robbery, Possession of a Firearm we will not proceed against him on the Assault with Intent to Murder since he did not fire the shots and that is the only part of the agreement should the court accept his pleas to the Armed Robbery and Felony Firearm.

Before the trial judge questioned defendant regarding his plea, defendant's attorney, Richard Monash, said:

> [*Mr. Monash:*] Mr. Ceteways has been fully, thoroughly advised of his rights. He knows full well that there's a trial date scheduled for Monday morning, that each and every witness that he requested has now been subpoenaed, served and is available for Monday morning. However, after extremely involved and lengthy discussion with my client, he's indicated to me it is his desire to offer the plea as outlined in that form.
>
> *The Court:* Is that correct?
>
> *Mr. Ceteways:* Yes, sir, Your Honor.

Defendant told the court that he had signed the plea form, that the answers were truthful, that he had gone over it with his attorney, and that he was freely and voluntarily pleading guilty. The usual colloquy concerning waiver of rights and sentencing took place and defendant described the details of the offense.

There were two different hearings at which sentences were pronounced. The first took place on January 24, 1985. At that hearing, defendant addressed the court as to his good prior record and his remorse. The prosecutor then gave his view of the facts, including the following:

> It is the feeling of the victim and police officers involved that while Mr. Ceteway [sic] might not be as active in the assault as the Carters were, but he was the one that devised the plan and organization. Certainly there's a strong feeling that he's as guilty as all in this incident in which Mr. Norman was nearly killed; his neck was cut and came within millimeters of severing his carotid artery. It's almost a felony murder, Your Honor. The Court should take that into consideration and this

man did play an equal part and certainly deserved
the fate of the others.

Defense counsel addressed the court, reminding
the court that the assault charge had been dis-
missed, and that "the facts of this case indicate my
client is not guilty of any assaultive conduct." He
stressed that Ceteways was primarily a driver and
nothing else. He also stressed that defendant's
record for thirty-seven years had been spotless,
that he had been an aid to the police in riot
control and neighborhood education, and that this
one afternoon was in stark contrast to the rest of
his life. He pointed out that the sentencing guide-
lines suggested a minimum sentence of between
thirty-six and seventy-two months for defendant
and said that, under the circumstances, those
guidelines were realistic.

The court then discussed the probation depart-
ment's recommendation of not less than twenty
nor more than eighty years with Thomas Bell, a
probation officer. When asked why the recommen-
dation was so much higher than the guidelines,
Bell responded:

> The discussion at the time was that of the
> seriousness of the offense and the fact that the
> victim was injured to the extent that he could
> have been killed and also that the police officers
> were fired upon, could have been seriously injured
> or killed during the police chase. It had a lot to do
> with the recommendation made by the Panel that
> it was an extremely serious offense and everyone
> concurred that all three defendants were involved
> to the extent that they deserved the sentence as
> recommended by the Panel.

Defense counsel responded that the probation
department should not hold defendant responsible

for the assaultive crime once the assault charge had been dismissed. Defendant himself expressed confusion at the prosecutor's and Mr. Bell's allegations concerning his responsibility for the assault, saying:

> [*Mr. Ceteways*]: Now it appears as if I'm going to be sentenced because I'm supposed to have shot at the police. I [sic] supposed to have had something to do with the man being cut . . . . I really don't understand this, you know. My attorney had talked to me and he explained to me that I'm up here on charges of Armed Robbery and Felony Firearm. And now it appears that the Prosecutor is saying that this man is responsible for shooting at police officers, which I never did and I really don't understand this.
>
> *The Court:* Well of course, the law does say that you are just as responsible as the people that you committed the crime with and when you embark upon something like an armed robbery, you take the consequences.
>
> *Mr. Monash:* To that extent, Your Honor, he obviously when he took the plea, he recognized the responsibility in that regard and he accepted it as being an aider and abettor in the armed robbery.

Opining that the guidelines were too lenient in this case, the trial judge sentenced defendant to not less than fifteen nor more than eighty years in prison, a sentence which was "a little bit more lenient" than that given to the codefendants. He also imposed the mandatory two-year sentence for felony-firearm and gave defendant credit for 202 days served. Defendant stated his intention to appeal.

Immediately following, the codefendants were sentenced to twenty to eighty years and twenty-three to eighty years, plus the mandatory two-year sentence for felony-firearm. At this point, all three

defendants said that they would like to read their presentence reports, which they had thought were supposed to be updated. Counsel had read the reports, but defendants had not. Ceteways said that he wished to read the updated report if that was the correct procedure. His counsel said that since the current report was identical to the most recent, prior report which the two of them had reviewed together, there was no need. In view of the obvious confusion, the court determined to get an update of the presentence reports and have defendants read them. As to defendant, the following conversation took place:

> *The Court:* Are you asking that you have an updated presentence report?
> *Mr. Lumberg:* For the record, Eugene Lumberg, on behalf of—
> *The Court:* (interjecting) Just a minute. Are you?
> *Mr. Ceteways:* I don't know.
> *The Court:* We'll adjourn it one week and I'll have an update. Can you do an update by next Thursday?
> *Probation Department:* Yes, Your Honor.
> *The Court:* Have him brought back next Thursday for sentencing.

The court then stressed that the reports should be read by all the defendants prior to the next hearing:

> It is your obligation gentlemen to show these reports to your clients and I expect by the time that they stand here to be sentenced two weeks from today you will have shown them the report; all the reports in the file relating to your clients.

Finally, defendant appears to have asked whether his sentence could commence immediately, instead of waiting for the update:

*Mr. Ceteways:* I'm not familiar with this. What I was wondering is, the sentence, I could go ahead on with it, get it over with and I'm interested in seeing the P.S.I. I came over here today to be sentenced.

*The Court:* Ceteway [sic], I'll delay it two weeks. We'll have an update and you're going to read it. Have a seat.

On February 6, 1985, the date scheduled for resentencing, defendant made two motions. First, he moved to withdraw his court-appointed attorney on the grounds that his counsel had pressured him into pleading guilty, despite his own repeated assertions of innocence and his desire to go to trial. The court requested to hear from defendant's attorney as well. Monash's version of the story was that it was defendant who, at the last minute, had decided to plead guilty, despite the fact that Monash had subpoenaed the witnesses and prepared for trial. The court listened to both versions of the story, amounting to over 1,200 words from defendant and 550 from Monash. The court then denied defendant's motion.

Defendant also moved to withdraw his guilty plea, again because of alleged pressure and misrepresentations from his attorney, which the attorney denied. The court denied this motion as well. After noting defendant's corrections to the presentence report and hearing Monash's reiteration of his prior assertions that defendant's record was spotless, the court sentenced defendant to the final sentence of not less than fifteen nor more than thirty years, plus the mandatory two years for felony-firearm, with 215 days credit. In doing so, the trial judge noted that he was taking into account "the need to discipline and punish you, the need to protect society and your potential for reformation and the need to deter others." The

trial judge also noted on the presentence information report his reasons for departing from the guidelines: "Lack of remorse and severe circumstances of the crime are not reflected in the guidelines.

Following the sentencing, the prosecutor put on the record his position that defendant had no right to withdraw his guilty plea after the court had accepted it and made the sentence known. Defendant replied:

> *Mr. Ceteways:* Well, I had—I did have an idea of the sentence to be imposed. If I understand correctly, I thought sentence was vacated meaning I was not sentenced. That's what I left the court feeling the last time.
>
> *The Court:* You certainly had a pretty good idea what the sentence would be. Matter of fact, I told you last time you were here.
>
> *Mr. Ceteways:* It wasn't a matter of sentence; it was just a matter of fact of me feeling that I was not guilty as charged before coming up here just as I was mentioning here a few minutes ago.
>
> *The Court:* I understand that.

Defendant later brought new motions to withdraw his plea and for a hearing under *People v Ginther*,[1] to determine whether his attorney should have been replaced by other counsel. The motions were denied on October 23, 1985.

Defendant raises several issues on appeal. His first argument is that the trial court erred in declining to hold a hearing to determine whether his court-appointed counsel should be replaced. The judge's responsibility to hold such a hearing is defined in *Ginther, supra,* where the Supreme Court held:

---

[1] 390 Mich 436; 212 NW2d 922 (1973).

An indigent defendant, entitled to the appointment of a lawyer at public expense, is not entitled to choose his lawyer. He may, however, become entitled to have his assigned lawyer replaced upon a showing of adequate cause for a change in lawyers.

When a defendant asserts that his assigned lawyer is not adequate or diligent or asserts, as here, that his lawyer is disinterested, the judge should hear his claim and, if there is a factual dispute, take testimony and state his findings and conclusion.

A judge's failure to explore a defendant's claim that his assigned lawyer should be replaced does not necessarily require that a conviction following such error be set aside. [*Ginther, supra,* pp 441-442.]

It is a defendant's responsibility to seek a hearing. Following the trial court's refusal to grant one, the correct remedy on appeal is to order the hearing.[2] The parameters of the testimony the trial court is required to take were recently discussed by this Court in *People v Morgan.*[3] There, defense counsel asked to be removed on the first day of trial because his client had lost faith in him. The trial court asked counsel whether he was prepared for trial and committed to represent his client to the best of his abilities, and counsel replied in the affirmative. The trial court then denied the motion. On appeal, this Court held:

While the trial court should have tried to elicit information from the defendant concerning any problems with the attorney-client relationship, the court succeeded in questioning the defense counsel regarding his preparedness and ability to work on the case. The trial court's inquiry was adequate to

---

[2] *Id.,* pp 443-444.

[3] 144 Mich App 399, 402; 375 NW2d 757 (1985).

insure that defendant would be competently represented at trial. [*Morgan, supra,* p 402.]

It would appear, then, that what is required under both *Ginther* and *Morgan* is that the trial court elicit testimony from the attorney and the defendant in order to assess any issues of fact. A full adversary proceeding, with counsel representing both the attorney and the defendant, is not required.[4] Indeed, the suggestion of *Morgan* is that questioning the attorney alone is sufficient in some circumstances, and *Ginther* explicitly says that failure to explore defendant's claim does not always require that the conviction be set aside. But that is beside the point, because here the trial judge clearly elicited testimony from the attorney and the client to gauge the truth of the matter, and disbelieved the client. Defendant's version of the facts covers several pages of uninterrupted talking in the transcript; defendant said what he had to say. An adversary hearing might package defendant's version of the facts more attractively, but the key to the question was what was said, privately, between attorney and client, and assessing that factual issue was essentially a matter of judging credibility. There was no error in failing to grant a hearing.

Defendant next argues that he was denied effective assistance of counsel because his attorney was placed in a position where his interests conflicted with defendant's own. While this might have been true if Monash had been placed in the awkward position of representing defendant in defendant's attempt to have him replaced, that difficult situation never occurred. The remaining events which took place while Monash still represented defen-

[4] See also *People v Cousins,* 139 Mich App 583, 593; 363 NW2d 385 (1984).

dant were the denial of defendant's motion to withdraw his guilty plea and the resentencing of defendant. The denial of defendant's motion to withdraw his guilty plea was proper regardless of what his counsel could have said, so that any conflict of interest that could have remained would have been harmless. As to defendant's sentencing, we note that defendant ended up with a fifteen to thirty year sentence for armed robbery when he started out with a fifteen to eighty year sentence, and even that earlier sentence was better than the twenty to eighty years which were imposed on his codefendants. Throughout the proceedings, counsel stressed defendant's good prior history and his remorse. If this sort of representation, followed by such reductions in sentence, constitutes ineffective assistance of counsel, it is difficult to imagine what defendant considers to be effective assistance. Both the prosecutor and the trial judge remarked on the diligent and professional conduct of trial counsel in this case. From what we can discern, we agree with them.

Defendant argues that he should be allowed to withdraw his guilty plea because promises made by the prosecutor in the plea agreement were unfulfilled. It is true that, where a defendant's plea is induced by an unkept promise, the mandated remedies are specific performance or vacating the plea, with considerable weight given to defendant's preference.[5] Here, defendant argues that the prosecutor agreed to dismiss the assault charges and then brought them up again when arguing for a long sentence. We have recounted above the places where the prosecutor, trial judge or probation officer made reference to any sort of assault.

It is clear from the pleadings and the transcript

[5] *People v Peters,* 128 Mich App 292, 296; 340 NW2d 317 (1983).

that the only assault charges were based on the shots taken at police officers and had nothing to do with the injuries to the victim. Therefore, when the prosecutor agreed to dismiss the assault charges, that agreement had no effect on any discussion or consideration of the injuries inflicted on the victim. Many of the references to which defendant objects are plainly references to the victim's injuries. Other discussions of what is ambiguously called simply "assault" most probably refer to those injuries as well.

The only clear references to the assault on the police officers was in Bell's explanation of the probation department's reason for its sentence recommendation and defense counsel's and defendant's reactions to that explanation. As the probation department made its original recommendation before the plea bargain was announced, Bell necessarily had to mention the assault to explain the recommendation. Defense counsel said that the assault should not be taken into account, and the fact that the trial judge gave defendant a lighter sentence than his codefendants indicates that he acted accordingly.

Finally, when defendant complained that he was being sentenced for the shooting when he had not done it, and for the injuries to the victim when he had not inflicted them, the trial judge vaguely said that "when you embark on something like an armed robbery, you take the consequences." Here, again, we may presume that the "consequences" the judge had in mind consisted of the injury to the victim. We are satisfied that the trial court did not consider the assault to commit murder when it sentenced defendant. Therefore, the bargain was fulfilled.

Defendant argues that he should have been allowed to withdraw his guilty plea at the Febru-

ary 6, 1985, hearing because he had not yet been sentenced. The prosecutor just as vigorously argues that defendant had already been sentenced. Both agree that defendant had wide discretion to withdraw his plea before sentencing, as per *People v Bencheck*.[6] Defendant argues that, when the trial court, after sentencing him, decided to wait two weeks for defendant to read his updated presentence report and then sentence him again, it effectively vacated the first sentence. Nowhere did the trial judge say he was vacating the sentence, but nowhere was the earlier sentence reduced to writing.

The technical answer to this question is not obvious. A recent case which gives some guidance is *People v Bingaman*,[7] where a judge had announced his intention to modify his sentence before the prisoner left the courtroom and later gave the prisoner a higher sentence. The prisoner argued that he was put in double jeopardy by being twice sentenced for the same offense, because the trial court lost its jurisdiction when he went to jail after the first sentencing. This Court held that, because the trial court had announced its intention to resentence, it did not lose its jurisdiction:

> Defendant has not cited, and we cannot find, any authority indicating that mere oral pronouncement of the sentence terminates the court's authority to modify the sentence. We decline to create such an inflexible rule here. [*Bingaman, supra*, p 159.]

*Bingaman*, while illuminating, is not very helpful here, for it does not say whether a defendant's right to withdraw his plea terminates only when

[6] 360 Mich 430, 433; 104 NW2d 191 (1960).
[7] 144 Mich App 152, 158-159; 375 NW2d 370 (1984).

the court loses its jurisdiction to resentence, or rather at some earlier time.

We reason this way: had the second hearing never been held because, for example, of the judge's determination that the presentence reports had been sufficiently reviewed, one could not say that defendant had not been sentenced. The sentence might not be entered, that is, reduced to writing, until later, but that is often the case with orders of a court. The order of sentence is effective from the moment that the judge gives it, not from the moment when it is written down. Defendant had been sentenced and could have been sent immediately to prison. The trial court's decision to resentence at a later time merely reserved its right to modify its sentence in the interests of justice. It did not vacate the sentence it had already imposed.

Therefore, we hold that, while a trial court stating on the record its intention to modify a sentence retains jurisdiction to resentence, the defendant's right to withdraw his guilty plea is not thereby revived unless the court expressly vacates the earlier sentence at that earlier hearing. No constructive purpose would be served by holding otherwise. The reason that a defendant loses his right to withdraw his plea upon sentencing is that the plea decision is not to be based on a certain knowledge of the sentence itself. A defendant cannot plead, hear his punishment, and then think the better of it. Allowing a defendant to change his plea after getting a first taste of the sentence would make a mockery of this principle.

Defendant finally argues that the sentence imposed on him was excessive, first because it was based on "inaccurate information," and second because it exceeded the sentencing guidelines without proper explanation. The first contention is

easily dispensed with. The trial court took note of all defendant's corrections to the presentence report and did not take into account the dismissed assault charge, as previously discussed.

As to the contention that the sentence was excessive because it exceeded the guidelines, we note that it was well within the statutory maximum, and that the minimum sentence was less than two-thirds of the maximum.[8] Such a sentence does not shock our judicial conscience for a crime as serious as this one and, therefore, does not require us to order its modification.[9]

It is true that the trial court exceeded the sentencing·guidelines and that at no point did the judge explicitly state in so many words the particular reasons for exceeding them. He did say that he felt they were too lenient, and the sentencing information report (SIR) contained the judge's notation that "Lack of remorse and severe circumstances of the crime are not reflected in the guidelines." It is plain from the discussion at the earlier sentencing hearing that the trial judge felt that defendant should be held responsible for the severe injuries to the victim. The trial judge also said, at both sentencing hearings, that he was taking into account the need to discipline and punish defendant, the need to protect society, defendant's potential for reformation and the need to deter others.

We recognize that there is a split of authority on this Court as to this issue. In *People v Good*,[10] one panel determined that putting the reasons on the presentence report was sufficient. However, panels

---

[8] See *People v Stevens*, 138 Mich App 438, 442-443; 360 NW2d 216 (1984).

[9] See *People v Coles*, 417 Mich 523, 550; 339 NW2d 440 (1983).

[10] 141 Mich App 351; 367 NW2d 863 (1985).

in *People v Fleming*[11] and *People v Spalla*[12] disagreed with *Good* and held that the reasons must appear both on the record and on the presentence report. In *Fleming,* we held that reasons for departing from the guidelines must appear on the record as well as the SIR. We believe the facts in this case can be distinguished from those in *Fleming.*

In *Fleming,* the defendants argued that they were sentenced on the basis of inaccurate information, but had not had the opportunity to object to or correct that information because they did not know, at the time of sentencing, what the trial judge's basis for departure from the guidelines was. On the contrary, in the within case, defendant knew exactly what the aggravating circumstances were and argued against them at the earlier hearing. Thus, we believe the policy concerns supporting the requirement that reasons for departure appear on the record have been satisfied here. So long as the reasons are made plain where a reviewing court can see them, we decline to reverse and remand.

Affirmed.

[11] 142 Mich App 119, 123-126; 369 NW2d 499 (1985), lv gtd 424 Mich 877 (1986).

[12] 147 Mich 722; 383 NW2d 105 (1985).