# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

MICHAEL DESHON MATTHEWS,

      Defendant-Appellant.

UNPUBLISHED
March 1, 2018

No. 336121
Wayne Circuit Court
LC No. 15-010167-01-FC

Before: GLEICHER, P.J., and BORRELLO and SWARTZLE, JJ.

PER CURIAM.

Defendant, Michael Deshon Matthews, appeals as of right his convictions and sentences, after a jury trial, of first-degree murder, MCL 750.316, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. On October 21, 2016, the trial court sentenced defendant to life without parole for murder, to be served consecutive to a two-year term of imprisonment for felony-firearm. We affirm defendant's convictions, but remand for a factual basis for the imposition of court costs and an evidentiary hearing as to the amount of restitution.

## I. BACKGROUND

In the early morning hours of November 22, 2015, defendant and several other individuals went to a nightclub in Detroit. Although they were permitted to enter, defendant and one of these individuals, Joshua Simpson, were later forcibly removed from the club by security. Their subsequent efforts at reentry were rebuffed. Thereafter, defendant asked Simpson for Simpson's handgun. Defendant walked to the front door of the club and again asked to enter. When the door opened, defendant reached in and shot a security guard, Darryl Jeter, Jr., in the head, killing him. Most of these events were captured on surveillance footage taken by an exterior camera.

Defendant was arrested later that day, and Clifford Woodards II was appointed to represent him in this matter. Trial was initially scheduled to begin on April 20, 2016. However, trial was delayed for reasons that will be discussed later in this opinion, and did not begin until September 28, 2016. Between his arrest and trial, defendant sent multiple letters to the trial court. These letters generally had two themes: (1) that defendant was unhappy with Woodards and wanted a new attorney appointed to handle the case, and (2) that defendant believed his right to a speedy trial was being violated by the length of time he remained in custody before trial.

-1-

When the trial began, two juries were selected, one to decide the charges against defendant, and the other to decide the charges against Simpson. However, before the trial court began taking evidence, Simpson pleaded guilty to second-degree murder, MCL 750.317, and felony-firearm.[1] Defendant rejected the prosecutor's final plea offer, and his case proceeded before the jury. After hearing the evidence, the jury found defendant guilty of first-degree murder and felony-firearm.

The trial court sentenced defendant to the terms of imprisonment stated at the outset of this opinion. The trial court imposed court costs of $1,300, but did not articulate a factual basis for the imposition of these costs. The trial court also ordered defendant to pay $7,500 in restitution to Jeter's mother as reimbursement for Jeter's funeral expenses. The amount of these expenses was derived from defendant's presentence investigation report (PSIR), which stated that the family had incurred funeral expenses in this amount, and that documentation would be provided at sentencing to support the figure. While no such documentation was presented at sentencing, defendant raised no objections to the restitution order, and never requested any documentation or other proof of the amount.

## II ANALYSIS

On appeal, defendant raises four contentions of error: (1) that the trial court abused its discretion by failing to appoint substitute counsel, (2) that the trial court erred by refusing to dismiss the matter due to the length of time that transpired between defendant's arrest and trial, (3) that the trial court erred by failing to articulate a factual basis for the imposition of $1,300 in court costs, and (4) that the trial court erred by imposing restitution in the amount of $7,500.

## A SUBSTITUTION OF COUNSEL

Defendant argues that the trial court abused its discretion when, at a final conference held on June 10, 2016, it rejected his request for substitute counsel without adequately exploring the factual bases for the request. "A trial court's decision regarding substitution of counsel will not be disturbed absent an abuse of discretion. A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011) (quotation marks and citations omitted).

As this Court explained in *Strickland*:

An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause exists where a legitimate

---

[1] Simpson was sentenced pursuant to a plea agreement. His convictions and sentences are not at issue in this appeal.

difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic. [*Id.* (quotation omitted).]

"When a defendant asserts that the defendant's assigned attorney is not adequate or diligent, or is disinterested, the trial court should hear the defendant's claim and, if there is a factual dispute, take testimony and state its findings and conclusion on the record." *Id*. (quotation omitted). But ultimately, "It is a defendant's responsibility to seek a hearing." *People v Cetaways*, 156 Mich App 108, 118; 401 NW2d 327 (1986). "[W]hat is required . . . is that the trial court elicit testimony from the attorney and the defendant in order to assess any issues of fact. A full adversary proceeding, with counsel representing both the attorney and the defendant, is not required." *Id*. at 119. "Indeed, . . . questioning the attorney alone is sufficient in some circumstances, and . . . failure to explore [a] defendant's claim does not always require that the conviction be set aside." *Id*.

Through a number of letters sent to the trial court, defendant made several complaints regarding Woodards and asked that he be replaced. On appeal, defendant first notes that he made one such request in a letter dated February 18, 2016. In this letter, defendant claimed that Woodards was working with the security guard Jeter and had a personal relationship with him. Defendant also alleged that Woodards was working with the prosecutor to sabotage defendant with a "fabricated video" and with "witnesses that can't place me at the scene." However, at a hearing held on March 11, 2016, the trial court questioned defendant and Woodards regarding this letter. The trial court asked defendant if everything had been "squared away" between him and Woodards, and defendant responded, "Yes." Woodards also confirmed that the two were working together at that point. Further, when Woodards asked defendant if he would consent to Woodards continuing to attempt to negotiate a plea with the prosecutor, defendant agreed to this course of action. Thus, based on the representations of defendant and Woodards at this hearing, whatever concerns existed at the time of the February 18, 2016 letter were resolved, leaving the trial court without any reason to remove Woodards at that point.

Defendant subsequently wrote several additional letters in which he stated various complaints regarding Woodards, and asked that he be given a new attorney. In one letter, dated May 25, 2016, defendant stated that Woodards had been ineffective, although he gave no further explanation. In a second letter dated the same day, defendant wrote that Woodards did not have defendant's "best int[e]rest in heart." Defendant stated that he wanted Woodards "put under investigation," and once again claimed Woodards was "hired by the victim[']s family[.]" Defendant wrote that Woodards was "a retained lawyer and I have not hired him[.]" Then, in a letter received by the trial court on June 9, 2016, defendant generally complained that Woodards had not responded to defendant's questions.

The trial court acknowledged receiving these letters at the June 10, 2016 final conference. The trial court asked to hear from Woodards. Woodards explained that he had presented the video evidence to defendant. On seeing this evidence, defendant claimed that the man who was with Simpson and appeared to have shot Jeter was not defendant. Woodards seemed to find this claim dubious, but nonetheless pursued the issue. Woodards asked defendant to explain who the man in the video was, if not defendant himself, so that Woodards could investigate the matter. At the hearing, defendant stated that he could not identify the man in the video. Woodards stated that he believed he and defendant could work out their apparent disagreement. The trial court

denied defendant's request, explaining that it did not believe defendant had presented any reason to discharge Woodards.

On appeal, defendant claims this decision was an abuse of discretion. Defendant largely complains that the trial court "did nothing" to discover whether irreconcilable differences existed between defendant and Woodards. Upon receiving defendant's letters, the trial court heard from Woodards to obtain his perspective. Having heard from both defendant and Woodards, the trial court then made its decision. To the extent defendant believes more factual development was necessary, it was incumbent on him to request a hearing. *Cetaways*, 156 Mich App at 118. Defendant did not request any such hearing, and cannot now complain that the trial court failed to investigate the matter further.

Nor did defendant's letters present good cause to discharge Woodards. Defendant seemed mostly to focus on a belief that Woodards had been retained by Jeter's family in this case. In this regard, defendant simply seems to have a misunderstanding regarding the retention of Woodards. Plainly, Woodards was appointed to represent defendant in this matter by the trial court; he was not retained by the victim's family.

Other than this claim, defendant alleged to have filed a grievance against Woodards, but gave no reason for the grievance. Defendant stated that Woodards was ineffective, but without any further elucidation. Defendant also generally complained that Woodards did not have his best interests at heart and did not respond to unspecified inquiries. As this Court has explained, "A mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause. Likewise, a defendant's general unhappiness with counsel's representation is insufficient." *Strickland*, 293 Mich App at 398 (citations omitted). Defendant's complaints regarding Woodards "lacked specificity and did not involve a difference of opinion with regard to a fundamental trial tactic." *Id*. We note that "neither [defendant's] complaints nor his filing of a grievance established good cause for the appointment of new counsel." *Id*. at 397-398. As such, we have no basis for making a finding that defendant received ineffective assistance of counsel.

## B SPEEDY TRIAL

Defendant argues that the trial court erred when, at the June 10, 2016 final conference, it denied his request for a dismissal of the charges due to a purported violation of his right to a speedy trial. Because defendant preserved his claim that his right to a speedy trial was violated, this Court "review[s] this constitutional issue de novo." *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999).

As this Court has explained:

> A defendant has the right to a speedy trial under the federal and Michigan constitutions, which the Michigan Legislature statutorily enforces. US Const, Am VI; Const 1963, art 1 § 20; MCL 768.1. This right ensures that a guilty verdict results only from a valid foundation in fact. See *People v Eaton*, 184 Mich App 649, 655-656; 459 NW2d 86 (1990). But see *United States v MacDonald*, 456 US 1, 8-9; 102 S Ct 1497; 71 L Ed 2d 696 (1982). Michigan courts apply the

-4-

four-part balancing test articulated in *Barker v Wingo*, 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972), to determine if a pretrial delay violated a defendant's right to a speedy trial. See *People v Collins*, 388 Mich 680; 202 NW2d 769 (1972). The test requires a court to consider "(1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant." *People v Williams*, 163 Mich App 744, 755; 415 NW2d 301 (1987). This fourth element, prejudice, is critical to the analysis. A delay that is under eighteen months requires a defendant to prove that the defendant suffered prejudice. *People v Taylor*, 110 Mich App 823, 828-829; 314 NW2d 498 (1981). However, a delay of eighteen months or more, as in this case, is presumed prejudicial and places a burden on the prosecutor to rebut that presumption. *People v Simpson*, 207 Mich App 560, 563; 526 NW2d 33 (1994). [*Cain*, 238 Mich App at 111-112.]

We begin with the last element, prejudice. Again, this is a "critical" part of the analysis. *Id*. at 112. Because the time between defendant's arrest and his trial was well under 18 months,[2] prejudice is not presumed, and the burden is on defendant to prove that he suffered prejudice. *Id*. There are two types of prejudice recognized in a speedy trial claim: "prejudice to the person and prejudice to the defense." *People v Gilmore*, 222 Mich App 442, 461-462; 564 NW2d 158 (1997).

As our Supreme Court has explained, "[p]rejudice to the defense is the more serious concern, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *People v Williams*, 475 Mich 245, 264; 716 NW2d 208 (2006) (quotation marks and citations omitted). In this case, defendant does not even attempt to argue that he suffered prejudice to his defense,[3] nor is any such prejudice apparent from the record. There is no evidence that the roughly 10 months that passed between defendant's arrest and his trial caused any evidence to go missing, any witnesses to be lost, or otherwise affected defendant's ability to present a defense.

Defendant only argues that he suffered personal prejudice. He first cites a portion of the following passage from *United States v Marion*, 404 US 307, 320; 92 S Ct 455; 30 L Ed 2d 468 (1971):

---

[2] "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). Defendant was arrested on November 22, 2015, and his trial began on September 28, 2016, a period of approximately 10 months.

[3] Rather, defendant attempts to argue that prejudice to the defense should not be given "undue emphasis . . . ." To this, we respond with this Court's observation that "[o]ur Supreme Court has repeatedly recognized in the context of lengthy pretrial incarcerations that the most significant concern is whether the defendant's ability to defend himself or herself has been prejudiced." *People v Waclawski*, 286 Mich App 634, 668-669; 780 NW2d 321 (2009).

It is apparent also that very little support for appellees' position emerges from a consideration of the purposes of the Sixth Amendment's speedy trial provision, a guarantee that this Court has termed an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself. Inordinate delay between arrest, indictment, and trial may impair a defendant's ability to present an effective defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends. . . . So viewed, it is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment. [Quotation marks and citations omitted.]

Defendant then explains that his "repeated attempts to inform the trial court that he wanted to be brought to trial implicates the personal prejudice discussed in *Marion*. The fact that [defendant] had been assigned counsel and was compelled to write letters to the judge underscores this point."

"General allegations of prejudice are insufficient to establish that a defendant was denied the right to a speedy trial." *People v Walker*, 276 Mich App 528, 544-545; 741 NW2d 843 (2007), vacated in part on other grounds 480 Mich 1059 (2008). All defendant has done is conclusively assert, without any basis in fact, that he suffered the type of prejudice discussed in *Marion*. His letters similarly raised only general concerns regarding his inability to be with his family while he was incarcerated. On this record we conclude that defendant has failed to demonstrate prejudice.

Even if we presume prejudice, the remaining factors do not demonstrate a violation of defendant's speedy trial rights. The first factor, the length of the delay, weighs against defendant. Again, no prejudice is presumed from a 10-month delay. *Cain*, 238 Mich App at 112.[4] A 10-month delay is not exceptionally long, and is far less of a delay than has ultimately been found not to result in a violation of the speedy trial right in other cases. See, e.g., *People v Holtzer*, 255 Mich App 478, 491-495; 660 NW2d 405 (2003) (finding a 19-month delay "somewhat lengthy," but ultimately not warranting dismissal); *Cain*, 238 Mich App at 112-113

---

[4] Cf. *Williams*, 475 Mich at 262 (when examining the first *Barker* factor, noting that the delay was 19 months in that case, and thus, presumptively prejudicial).

(explaining that a 27-month delay was "longer than a routine period between arrest and trial[,]" but did "not approach the outer limits of other delays" that this Court has addressed).

The second factor, the reasons for the delay, further undercuts defendant's claim. "In assessing the reasons for delay, this Court must examine whether each period of delay is attributable to the defendant or the prosecution." *People v Waclawski*, 286 Mich App 634, 666; 780 NW2d 321 (2009). Unexplained delays, as well as delays inherent in the legal system, such as docket congestion, are charged against the prosecution. *Id*. But while delays inherent in the legal system are technically charged to the prosecution, "they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *Id*. (quotation omitted).

Through counsel, defendant initially agreed to a trial date of April 20, 2016. However, it must be noted that the trial court initially attempted to set a trial date of March 23, 2016, and that Woodards asked for a different date due to his own schedule. This resulted in a trial date of April 20, 2016. Thus, were it not for defense counsel's schedule, trial would have initially been set a month earlier.

That said, trial did not begin until September 28, 2016. However, the reasons trial did not occur as scheduled were entirely reasonable, having essentially been caused by the need to sort out issues related to Simpson, who was to stand trial with defendant. On March 22, 2016, approximately a month before the date scheduled for trial, the trial court ordered Simpson to undergo a competency evaluation. This issue was not resolved until June 10, 2016, when the trial court found Simpson competent to stand trial. At the final conference held that same day, the trial court set trial for September 28, 2016. This date was selected because Simpson was scheduled to stand trial in an unrelated carjacking case, which would be completed on September 27, 2016. On the whole, while some routine delays might be attributable to the prosecution as a technical matter, it does not appear that any delays that could be charged to the prosecutor were unreasonable. This factor weighs against finding a violation of the right to a speedy trial.[5]

The third factor is the assertion of the right to a speedy trial. *Cain*, 238 Mich App at 111-112. Defendant did assert his right to a speedy trial on multiple occasions, albeit somewhat informally. At least arguably, this factor weights in favor of defendant. However, this is the only factor that ultimately weighs in defendant's favor. We cannot conclude that defendant's right to a speedy trial was violated in this instance. To do so would essentially be a conclusion that defendant's right to a speedy trial was violated simply because he wrote several letters

---

[5] It is also true that two adjournments occurred at defense counsel's request. However, we do not see either adjournment as particularly relevant. The first was an adjournment of what was to be a final conference from February 18, 2016, to March 11, 2016. This adjournment did not seem to affect what was expected to be the trial date at that time, April 20, 2016. Woodards did obtain another adjournment of a pretrial conference from May 16, 2016, to May 25, 2016. However, this was during the period that the issue of Simpson's competency was unresolved, and thus, this adjournment also seems to have had no effect on the date defendant's trial ultimately began.

raising the issue, as that is the only factor weighing in his favor. The trial court correctly denied defendant's request for a dismissal of the case based on his claim that his right to a speedy trial had been violated.

## C COURT COSTS

Defendant argues that the trial court erred by failing to articulate a factual basis for the imposition of $1,300 in court costs, and asks that the trial court's imposition of these costs be vacated. The prosecutor concedes that the trial court failed to articulate a factual basis for the imposition of these costs, but asks this Court to remand the matter to provide the trial court with the opportunity to articulate a factual basis for the imposition of costs rather than vacate the award. Having conceded error, we grant the request of the prosecutor and remand the matter to the trial court to articulate a factual basis for the imposition of costs. See, *People v Konopka*, 309 Mich App 435, 351-356; 869 NW2d 651 (2015); *People v Cunningham*, 496 Mich 145, 147, 154-155; 852 NW2d 118 (2014).

## D. RESTITUTION

Finally, defendant contends that the trial court abused its discretion by imposing $7,500 in restitution, and asks that this portion of the judgment of sentence be vacated. The prosecutor agrees that defendant is entitled to some measure of relief, but asks that rather than vacate the restitution order, we remand the matter for an evidentiary hearing regarding the amount of restitution. We grant the request of the prosecutor and remand the matter for an evidentiary hearing regarding the amount of restitution in this matter.

Affirmed in part, and remanded for the trial court to state a factual basis for its order of court costs and if necessary, to conduct an evidentiary hearing regarding the amount of restitution. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Brock A. Swartzle