986 F.2d 1421
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Martin Leon LAKER, Petitioner-Appellant,
v.
Thomas KINDT, Respondent-Appellee.
 No. 91-2537.
 United States Court of Appeals, Sixth Circuit.
 Feb. 17, 1993.
 
 Before ALAN E. NORRIS and SILER, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner, Martin Leon Laker, was convicted in a Michigan state court of armed robbery and use of a firearm in the commission of a felony. He appeals the district court's denial of his pro se 28 U.S.C. § 2254 habeas corpus petition. He asserts violations of his constitutional rights of due process, when the trial court denied his request for a psychiatrist advocate, and of a speedy trial. For reasons stated herein, we AFFIRM the judgment of the district court.
 
 
 2
 On June 4, 1985, Laker was arrested for the armed robbery of a credit union. On July 17, 1985, he filed a motion making several requests, including the dismissal of his court appointed counsel, appointment of new counsel, and appointment of an investigator and psychiatrist advocate. By August, 1985, he was arraigned on the charges, and an order for a forensic examination was entered. Moreover, the court ruled on the motions by appointing new counsel and agreeing to appoint a psychiatrist advocate and investigator. On Laker's request, trial was continued to allow time for further investigation and preparation.
 
 
 3
 During the next three and one-half months, Laker was in federal custody awaiting trial on federal charges. Meanwhile, his second court-appointed counsel filed a notice of an insanity defense, requested the production of witnesses, and scheduled an independent psychiatric examination. On December 23, 1985, an evaluation was conducted by a forensic psychiatrist, Elaine Benedek, M.D. A competency hearing was scheduled for January 23, 1986, but the prosecution was not prepared to proceed with the hearing on that date. However, at the same time, Laker's counsel indicated to the court that he was not prepared to go to trial, and requested a continuance in order to pursue an interlocutory appeal.
 
 
 4
 On February 4, 1986, the trial court found Laker competent to stand trial. Laker then moved for the appointment of Dr. Bennett Leventhal, an out-of-state psychiatrist, as his independent psychiatrist. As a result, on March 31, 1986, the trial was continued to allow for an evaluation by Laker's independent psychiatrist. However, the trial court rejected the request for Dr. Leventhal, but instead approved the appointment of a local psychologist, Dr. Michael Abramsky. In the following three months, the trial was continued on two different occasions upon Laker's request. At an August 11, 1986, status conference, counsel indicated that Abramsky needed past medical and psychiatric records in order to conduct his evaluation. The trial was continued a sixth and seventh time in September and December, 1986, while Laker awaited the receipt of his medical records from the federal authorities.
 
 
 5
 On February 13, 1987, the trial was continued for an eighth time as Laker was found to be in violation of his federal parole, and was sentenced to serve the remainder of his federal sentence. Likewise, a June 9, 1987, trial date was rescheduled until July 3, 1987, due to Laker's federal custody.[1]
 
 
 6
 Finally, on July 7, 1987, the trial began and it lasted until July 17, 1987. At trial, Laker presented evidence to establish his diminished capacity, including: (1) testimony from several witnesses regarding his bizarre behavior prior to the robbery, i.e., talking to his deceased parents; (2) psychiatrist Ruth Day's testimony that, based on limited background information, Laker was manic depressive; and (3) Laker's testimony that he could not remember the events prior to or during the robbery. On rebuttal, Dr. Benedek testified that she examined Laker in January, 1986, and, in her opinion, Laker was capable of forming the necessary intent to commit the criminal acts. The jury returned a guilty verdict, and Laker was sentenced to ten to thirty years for armed robbery and two years for felony firearm.
 
 I.
 The Supreme Court has stated that:
 
 7
 when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own.
 
 
 8
 Ake v. Oklahoma, 470 U.S. 68, 83 (1985). Similarly, Michigan law provides for an independent psychiatric evaluation by a clinician of choice at county expense for any indigent criminal defendant. MichComp.Laws § 768.20a(3); Mich.Stat.Ann. § 28.1043, § 20a(3).
 
 
 9
 The trial court rejected, due to economics, the request to appoint Dr. Leventhal. The trial court instead appointed Dr. Abramsky to evaluate Laker. Although Abramsky was a local psychologist, he was qualified to conduct an independent evaluation of Laker. It was Laker's choice to not use Abramsky as an "advocate" or witness at trial, as Abramsky concluded that Laker was sane at the time he robbed the credit union. The trial court fulfilled its obligation to appoint a qualified clinician to conduct the mental evaluation. Thus, Laker's due process rights were not violated.
 
 II.
 
 10
 To evaluate a speedy trial claim, four factors must be balanced: (1) length of the delay; (2) reasons for the delay; (3) defendant's assertion of his right; and (4) prejudice to the defendant caused by the delay. See Barker v. Wingo, 407 U.S. 514, 530 (1972). A review of the record indicates that the length and reasons for the delay of Laker's trial were due, in large part, to his own actions.
 
 
 11
 Laker was arrested in June, 1985, and brought to trial on July 7, 1987. He contends that he was prejudiced by the delay in two areas: (1) a denial of access to religious rituals while in custody awaiting trial; and (2) the resulting destruction of evidence. However, the infringement on his religion did not prejudice his defense. Likewise, the destruction of certain items, e.g., the latex gloves and stocking mask used in the robbery, did not prejudice his defense, as he admitted the robbery.
 
 
 12
 Laker's repeated dismissal of appointed trial counsel, lack of cooperation in his independent psychiatric evaluation, and the approximately seven requests for trial continuances because he was not prepared for trial, or was in federal custody, contributed substantially to the lengthy delay. While the prosecution admitted some responsibility for the delay between January, 1986, and May, 1986, Laker must share the responsibility, as psychiatric evaluations generally involve delay chargeable to the accused. People v. Taylor, 314 N.W.2d 498, 502 (Mich.Ct.App.1981). Furthermore, although the trial was adjourned several times as Laker awaited receipt of past medical and psychiatric records from federal authorities, this delay was not so substantial as to result in prejudice to the defense. Thus, Laker's speedy trial right was not violated.
 
 III.
 
 13
 For the foregoing reasons, we AFFIRM the district court's denial of the petition for a writ of habeas corpus.
 
 
 
 [1]
 An April 21, 1987, trial date was rescheduled for April 28, 1987, to allow the trial judge to attend a judicial seminar. Subsequently, the April 28 trial was adjourned upon Laker's request