# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARCEL JEROME ROBINSON,

Defendant-Appellant.

UNPUBLISHED
April 11, 2017

No. 330304
Genesee Circuit Court
LC No. 15-037293-FC

Before: O'CONNELL, P.J., and GLEICHER and BOONSTRA, JJ.

PER CURIAM.

A jury convicted defendant of first-degree criminal sexual conduct, MCL 750.520b, assault with intent to commit criminal sexual conduct involving penetration, MCL 750.520g, unlawful imprisonment, MCL 750.349b, and assault with intent to do great bodily harm less than murder, MCL 750.84, after he lured a young woman to a vacant home and forcibly raped her. Defendant contends that the trial court permitted overly prejudicial and inadmissible evidence to infect his trial. He also challenges the scoring of various offense variables underlying his lengthy sentences. These claims lack merit. We affirm.

## I. BACKGROUND

On the afternoon of September 4, 2012, 18-year-old J agreed to meet defendant at his home to "chill." It is unclear how the two first connected, but they had communicated via text message for several days and agreed to meet in person for the first time. When J arrived at defendant's "residence," she found it empty of furniture except a small table. J sat her cell phone on the table and plugged it in to charge. Defendant removed J's phone battery and refused to return it. J fought defendant, but then ran from the house.

J determined to return for her phone battery. She attempted to take the battery from defendant but he knocked her to the ground and sat on her chest. Defendant tried to force J to perform fellatio, but she fought him off. Defendant then punched J in the left eye three or four times. J curled up on her side. J alleged that defendant pulled out a gun. (In an earlier statement, she claimed defendant was armed with a knife.) Fearful for her life, J stopped struggling. Defendant then forced J into penile-vaginal intercourse. Afterward defendant returned J's cell phone battery and she fled.

-1-

J telephoned for help and a relative took her to the hospital. Her left eye was swollen shut, her orbital bone was fractured, and there was "some bruising" on her neck. Semen was detected on a vaginal swab. DNA from the semen matched defendant's profile, which was already on file with CODIS. Despite this evidence, the police waited nearly three years to pursue an investigation. An officer showed J a photographic array including an image of defendant, whom she identified immediately.

The prosecutor played for the jury defendant's recorded police interview following his arrest. Defendant began by denying any acquaintance with J. Defendant repeatedly changed his story as the interrogating officer revealed additional evidence. Defendant eventually claimed that he paid J for sex and admitted that he slapped her once, but denied that he raped or punched her.

## II. MISTRIAL FOR IMPROPER ADMISSION OF EVIDENCE

Defendant first argues that the trial court abused its discretion by denying his request for a mistrial, made after the prosecutor failed to adequately redact inadmissible statements from his recorded police interview. Whether to declare a mistrial falls within a trial court's discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). A mistrial is warranted "only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *Id.* (quotation marks and citation omitted).

The prosecutor played defendant's police interview into the record during the testimony of the interrogating officer, William Surface. The prosecutor and defense counsel met and agreed that certain portions of the recording needed to be redacted because defendant mentioned other criminal offenses and asked for a polygraph examination. The prosecutor did not have the capability to electronically alter the recording. Accordingly, the prosecutor intended to fast-forward through or mute specific portions of the recording. Defense counsel expressed concern over the efficacy of this method as the interrogation was fast paced.[1]

Defense counsel's fears were well founded. At one point during the recording, defendant asked Surface when he could expect to go to court because, "I'm supposed to go to court in the morning for this other stuff," suggesting that defendant was facing charges in unrelated matters. The prosecutor paused the recording and asked Surface to explain the "other stuff" mentioned by defendant. Surface responded that defendant was "arrested on two warrants," bringing him into police custody. Defense counsel did not contemporaneously object to this particular exchange.

Later, the prosecutor failed to mute or fast-forward the recording during Surface's disclosure of a prior sexual assault committed by defendant:

---

[1] Because of the manner in which the video was "redacted" for the jury, we were unable to review the recording and determine what the jury actually heard. The court stenographer transcribed the video as it was played to the jury, however, and the parties agreed to certain errors in the transcription.

[*Surface*]: [On recording.] You've been raped?

[*Defendant*]: Yes, sir. I've been raped. That's not cool. You've got some people who fight like that. My sister has been raped.

\* \* \*

This was going on for a long time. Will not be able to get over [sic].

*Surface*: Yeah. But in the same aspect you'd never do anything that would make somebody feel uncomfortable, right? Because of what happened to you when you were eleven, right?

*Defendant*: Yes. I would not rape anybody, sir.

*Surface*: - - grabbed that teacher's breast when you were twelve.

*Defendant*: That was it.

Realizing his error, the prosecutor stopped the recording and the trial court ordered a recess. Defense counsel admitted that he had requested admission of information regarding defendant's experience as a rape victim. However, defense counsel moved for a mistrial based on the jury's discovery that defendant had sexually assaulted a teacher. The trial court denied defendant's mistrial request and instead instructed the jury, "[S]ome evidence of other misconduct than that charged in the Information in this case may have been presented to you. It is totally irrelevant to these charges and must be disregarded by you."

Subsequently, the prosecutor failed to mute or fast-forward the recording when defendant mentioned a polygraph examination: "I don't care when you want to give me the lie detector test." Defense counsel did not raise a timely objection, but renewed his motion for a mistrial at the close of the prosecution's proofs. The court again ruled that a curative instruction was sufficient to remedy the error.

## A. PRIOR BAD ACTS

The prosecutor urges this Court to find defendant's challenge regarding "this other stuff" waived. At the time the jury learned that defendant was awaiting a court date on two other charges, defense counsel raised no objection. After the jury heard Surface mention defendant's prior sexual assault of a teacher, counsel indicated that he was "not going to make too big of a note of this one." The record belies that defendant's challenges were waived. Defense counsel repeatedly expressed hesitation when the prosecutor proposed redaction of the recorded interview by fast-forwarding through inadmissible statements. Although defense counsel did not contemporaneously object to every mention of defendant's prior bad acts, he twice moved for a mistrial on this very basis, including immediately after the prosecutor requested a recess based on the inadvertent presentation of information regarding the prior sexual assault.

The prosecutor concedes that statements regarding defendant's other pending crimes and defendant's prior sexual assault of a teacher constituted inadmissible other acts evidence. The

-3-

question remains whether a curative instruction sufficed to remedy the prejudice or whether a mistrial was required. The improper mention of a defendant's prior bad acts may necessitate a mistrial. *People v Griffin*, 235 Mich App 27, 36; 597 NW2d 176 (1999), overruled in part on other grounds *People v Thompson*, 477 Mich 146, 148 (2007). "However, not every . . . mention before a jury of some inappropriate subject matter warrants a mistrial." *Id.*[2] The defendant must establish prejudicial error to warrant relief. *Schaw*, 288 Mich App at 236.

It is unlikely that the brief and inadvertent disclosures of inadmissible bad acts evidence resulted in prejudice or affected the outcome of defendant's trial. Defendant's jury heard four days of evidence, with the recorded interview being played on the final day of trial. By that time, the jury had already heard J's testimony describing the brutality of the attack and testimony from J's relatives regarding her emotional distress that day, as well as reviewing the physical evidence establishing that sexual intercourse had occurred and that J suffered severe injuries. The interview was itself three hours long, even with the prosecutor's frequent redactions. During this lengthy period, there was only one mention of defendant's other pending crimes—when Surface explained that defendant had been arrested on two outstanding warrants. And the sole mention of defendant's prior sexual assault on a teacher was short and confusing. In the context of a three-hour-long recording, consisting in substantial part of defendant's constantly changing account of the incident, it is unlikely that the brief inadmissible statements overwhelmed the jury.

Additionally, a mistrial should be granted only "when the prejudicial effect of the error cannot be removed in any other way." *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008). Cautionary instructions limit the potential for undue prejudice and "cure most errors." *Id.* The trial court twice instructed the jury to disregard "evidence of any other misconduct by the Defendant than that charged in the Information." "[J]urors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

## B. POLYGRAPH

Defendant argues that the improper mention of a polygraph examination was, on its own, enough to warrant a mistrial. It is true that admission of any reference to a defendant taking or passing a polygraph test is error. *People v Nash*, 244 Mich App 93, 97; 625 NW2d 87 (2000). However, a reference to a polygraph test does not always require a mistrial. *Id.* at 98. The "reference may be a matter of defense strategy, the result of a nonresponse [sic] answer, or otherwise brief, inadvertent and isolated." *Id.* (quotation marks and citation omitted). To determine whether relief is required, we examine:

---

[2] The prosecutor contends that a mistrial was not warranted in this case because defendant volunteered the subject information and provided unresponsive answers to Officer Surface's questions during the interview. This maxim applies to a witness's unresponsive answers on the *stand*, not during a recorded police interview. And defendant did not mention his prior sexual assault charge, Surface did. Moreover, the prosecutor specifically elicited testimony regarding defendant's arrest for two other charges from Surface on the stand. The prosecutor's legal argument completely lacks merit.

(1) whether defendant objected and/or sought a cautionary instruction; (2) whether the reference was inadvertent; (3) whether there were repeated references; (4) whether the reference was an attempt to bolster a witness's credibility; and (5) whether the results of the test were admitted rather than merely the fact that a test had been conducted. [*Id*. (quotation marks and citation omitted).]

Considering the above factors, we cannot conclude that the trial court abused its discretion when it denied defendant's request for a mistrial. The jurors' exposure to the mention of the polygraph examination was inadvertent and very brief. Other than in the trial court's final instructions, no other reference was made to the statement or to defendant's possible participation in a polygraph examination. There is no evidence that the reference was intended to bolster any witness's credibility. The brief statement contained no indication that a polygraph examination was ever conducted, let alone what the results of such an examination had been. Finally, the trial court specifically instructed the jury to disregard this information. The curative instruction was sufficient to eliminate any undue prejudice caused by the brief mention of a polygraph examination. Because the inadvertent error did not prejudice defendant or deprive him of a fair trial, a mistrial was not warranted.

## III. IMPROPER OPINION TESTIMONY

Defendant also contends that he was denied the right to due process when the prosecutor improperly elicited testimony from Officer Surface regarding his opinion on defendant's guilt. Although defense counsel twice objected to Surface's testimony, he did so on other grounds. This issue is not preserved. *People v Asevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996). Our review is therefore limited to plain error affecting defendant's substantial rights. *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011).

The issue of a defendant's guilt or innocence is a question for the jury to resolve, *People v Suchy*, 143 Mich App 136, 149; 371 NW2d 502 (1985), and a witness may not opine about the defendant's guilt or innocence in a criminal case, *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012). However, any lay witness, including a police witness, is permitted to testify "in the form of opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

Defendant first challenges Surface's testimony that defendant lied during his interview. In order to highlight the evolution of defendant's story throughout the interview, the prosecutor engaged Surface in the following discussion:

> *Prosecutor*: And when you talk to a suspect about something three years old, something like that, does it usually come back to them this quickly where they have almost instant recall?
>
> *Defense Counsel*: Judge, I'm going to object. The question calls for what usually goes on—
>
> *The Court*: I'm going to sustain that objection. Thank you.

> *Prosecutor*: Can I - - if I lay a foundation for his - -

> *The Court*: Perhaps.

> *Prosecutor*: Experience?

> *The Court*: But you'll have to lay the foundation more clearly.

> *Prosecutor*: How many interviews have you done?

> *Surface*: It's countless, sir. Through just from the year of doing this being in the criminal sexual crime unit fifty to a hundred, maybe more.

> *Prosecutor*: In the course of a year?

> *Surface*: Yes.

> *Prosecutor*: And do you - - do you sometimes have to talk to people about things that happened years ago?

> *Surface*: Yes, sir. I do.

> *Prosecutor*: All right. And when you do bring up subject matter like that is it common for someone being interviewed to go from I know nothing, I know nothing, I know nothing to now I can tell you and give you an entire narrative?

> *Surface*: Yes. When they're lying.

> *Defense Counsel*: Your Honor, again I'm going to object.

> *The Court*: Then ask a different question. I'll sustain the objection again. Rephrase your question.

Later, during cross-examination of Surface, defense counsel queried:

> *Defense Counsel*: Do you recall when you were interviewing [defendant,] [BJ] saying that she had a special need that was that she had been put out of the house by - - she had been put out by an individual and she needed some money for that? Do you recall that?

> *Surface*: That's what [defendant] said.

> *Defense Counsel*: Okay. And would - - would that indicate to you that this is a person in this activity [referring to BJ's alleged money-for-sex request] just to engage in it or has a special need if that statement is in fact true? Would that indicate it's a person who engages in this activity on a regular basis or just a special need?

-6-

*Surface*:  Well, you're taking just one statement.  He had lied to me numerous times in that interview which I caught him in numerous lies.

*Defense Counsel*:  I appreciate - -

*Surface*:  (Inaudible)

*Defense Counsel*:  Sir, I appreciate that you want to get that information in as many times as you can but it doesn't answer my question.  And the answer to the question is a yes or no question [sic].  Does this indicate that - - if this is true does this indicate that this is a special needs type case or that somehow or other she should have known the going rate for this type of service?

*Surface*:  I don't believe it was a true statement.

*Defense Counsel*:  You don't want to answer the questions?

*Surface*:  Well I can't answer the question if I don't believe it's a true statement.  He's making this up.

*Defense Counsel*:  In your opinion?

*Surface*:  My opinion right now is the truth.

*Defense Counsel*:  Your opinion is the truth?

*Surface*:  Yes.  'Cause he lied about everything else.  I - - he lied.

*Defense Counsel*:  In response to your lies?

*Surface*:  My lies are to get him to trust me, get him to tell the truth.  He is lying to get out of going to jail which I showed numerous times.

*Defense Counsel*:  And I appreciate that you want to get in front of the jury your statement that you think he lied as many times as you can but - -

*Prosecutor*:  Objections, your Honor.  Can we approach about this?

*The Court*:  I think we better stop the whole thing.  It's up for the jury to decide who's lying.

Surface's opinion that an interviewee who repeatedly changes his story is lying was elicited after the jury first heard defendant's recorded claim that he had no idea who J was, listened as the story morphed into an admission that defendant knew full well what happened on the day in question.  Surface's opinion in this regard was unnecessary as the jury could glean for itself that defendant was lying.

Surface sat through a three-hour interrogation with defendant, in which defendant significantly altered his story at least three times.  Defendant admitted that he lied at several

points during the interview, and signed a statement drafted by Surface admitting that he had lied repeatedly during his interview. Surface was permitted to testify to actions he personally witnessed, and to infer from the circumstances that defendant was lying during the interview. Although Surface expressed the opinion that defendant was untruthful during his interview, he in no way suggested that defendant's untruthfulness equated to guilt of the underlying offenses.

In any event, defendant cannot show that Surface's opinion testimony was outcome determinative. The jurors viewed the recorded interview in its near entirety, with only inadmissible portions redacted. They heard defendant ask Surface, on several different occasions, if he could avoid prison by agreeing to "tell the truth," and watched for nearly three hours as defendant repeatedly changed his story and admitted to lying on numerous occasions. Especially in light of defendant's own admissions, it is unlikely that Surface's opinion regarding defendant's veracity made any difference during jury deliberations.

Defendant also challenges Surface's characterization of J as a "rape victim," which defendant claims improperly suggested defendant's guilt. Specifically, the prosecutor asked Officer Surface whether J hesitated before cooperating in the investigation three years after her assault. Officer Surface responded: "She is a rape victim. This isn't something easy for somebody to come up here and do to sit here and testify about that horrendous assault." Defense counsel objected to this statement, and the court sustained the objection. On appeal, the prosecutor concedes that Surface's characterization of J as a "rape victim" improperly suggested defendant's guilt and constituted plain error. However, the prosecutor argues that the error was not so prejudicial as to require relief.

It is worth nothing that the court, the prosecutor, and even defense counsel referred to J as "the victim" throughout this trial. While Officer Surface's statement went too far, the officer did not introduce the concept of J as victim to the jury. Overall, it is likely that the jury understood that this label was not intended to suggest defendant's guilt, but was employed for the sole purpose of promoting consistency. More specifically, Surface's comment was brief and unsolicited. Although defendant did not request a curative instruction specific to Surface's statements, the jury was instructed on the presumption of innocence, the requirement of finding guilt beyond a reasonable doubt, and the proper weighing of witness credibility, including the credibility of police officers. Again, the jurors are presumed to have followed their instructions. *Graves*, 458 Mich at 486. Given the significant evidence of defendant's guilt, we cannot find this single error outcome determinative.

Finally, because defendant has established only one error, his argument regarding cumulative error must fail. Relief based on the cumulative effect of several errors requires "the establishment of errors," plural. *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007).

IV. SCORING OF OFFENSE VARIABLES

Finally, defendant contends that the trial court erroneously assessed 15 points for offense variable (OV) 1, 10 points for OV 4, and 50 points for OV 7. He also asserts that his counsel was ineffective in failing to object to these variables at the sentencing hearing. We discern no error in the scoring of OVs 1 and 7 and any potential error in scoring OV 4 would not have

impacted defendant's sentencing guidelines range. Accordingly, defendant is not entitled to resentencing and his attorney's performance cannot be deemed constitutionally deficient.

We review for clear error the trial court's factual findings at sentencing, findings that must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). We review de novo whether the factual determinations were sufficient to support a particular score. *Id*; see also *People v Steanhouse*, 313 Mich App 1, 38; 880 NW2d 297 (2015), lv gtd 499 Mich 934 (2016) (holding that because scoring the OVs remains relevant under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), the standards of review traditionally applied to the trial court's scoring of the OVs remain viable). The interpretation of the guidelines is a legal question that we review de novo. *Hardy*, 494 Mich at 438.

## A. OV 1

OV 1 is scored for the "aggravated use of a weapon." MCL 777.31(1). Fifteen points is appropriate if "[a] firearm was pointed at or toward a victim or the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon." MCL 777.31(1)(c). J testified that defendant brandished a gun during the assault, asserting, "That's when I was with a *gun pulled out on me* was [sic] raped." (Emphasis added.) This supported the court's score. J had earlier claimed defendant's weapon was a knife. However, J's inconsistencies do not nullify the assessed score for OV 1. This merely presented a credibility issue for the trial court to resolve. We may not interfere with that judgment. MCR 2.613(C).

## B. OV 4

"[OV] 4 is psychological injury to a victim." MCL 777.34(1). The sentencing court must assess 10 points if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). The fact that treatment has not been sought is not conclusive, MCL 777.34(2), but the record must contain "some evidence of psychological injury" to justify the assessment of points. *People v Lockett*, 295 Mich App 165, 183; 814 NW2d 295 (2012). Evidence of the victim's "personality changes, anger, fright, or feelings of being hurt, unsafe, or violated" supports an assessment of 10 points for OV 4. *People v Schrauben*, 314 Mich App 181, 197; 886 NW2d 173 (2016) (quotation marks and citation omitted). However, "[t]he trial court may not simply assume that someone in the victim's position would have suffered psychological harm because MCL 777.34 requires that serious psychological injury occurred to a victim," and there must be record evidence to support such a finding. *Lockett*, 295 Mich App at 183 (quotation marks and citation omitted).

In this case, we need not decide whether the trial court properly assessed 10 points for OV 4. Even if the OV was scored in error, defendant would not be entitled to resentencing because a 10-point adjustment of his overall OV score would not change his sentencing guidelines range. CSC-I is a Class A offense. MCL 777.16y. Defendant was originally assessed a total OV score of 145 points, placing him in OV Level VI. The reduction of 10 points would adjust defendant's total score to 135 points, which also falls in OV Level VI. Coupled with defendant's uncontested prior record variable score of 42, defendant's minimum sentencing guidelines range would be 171 to 285 months. MCL 777.62. This is the same guidelines range

employed by the trial court at sentencing. A potential error in scoring that would not alter the applicable sentencing guidelines range would be deemed harmless. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

## C. OV 7

The trial court did not err when it assessed OV 7 at 50 points. At the time of defendant's sentencing, the Legislature directed trial courts to assess 50 points for OV 7 if "[a] victim was treated with sadism, torture, excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a).[3] "A trial court can properly assess 50 points under OV 7 if it finds that a defendant's conduct falls under one of the four categories of conduct listed in subsection (1)(a)." *Hardy*, 494 Mich at 439-440. For purposes of OV 7, the sentencing court should closely examine all relevant evidence to determine "whether the defendant engaged in conduct beyond the minimum necessary to commit the crime, and whether it is more probable than not that such conduct was intended to make the victim's fear or anxiety increase by a considerable amount." *Id.* at 443.

A preponderance of the evidence supports that defendant "went beyond the minimum conduct necessary to commit" a sexual assault. *Id.* at 446. In *Hardy*, 494 Mich at 446-447, the Supreme Court determined that the defendant went beyond the necessary conduct to commit armed robbery:

> To commit this crime, a defendant must engage "in conduct proscribed under [MCL 750.530,]" Michigan's robbery statute, which criminalizes using "force or violence against any person who is present" at a larceny or assaulting or putting "the person in fear[,]" "in the course of committing a larceny." To commit an armed robbery, the defendant must also either (1) possess "a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon," or (2) represent "orally or otherwise that he or she is in possession of a dangerous weapon[.]" *To rob the convenience store, [the defendant] could have simply put the victims in fear by orally representing that he had a weapon.* Instead, he chose to threaten the victims with what appeared to be a sawed-off shotgun, and then used it to strike two different victims in the head. Hence, [the defendant's] conduct went beyond that necessary to commit an armed robbery. [Emphasis added.]

Here, defendant was convicted and sentenced for CSC-I based on multiple factors: MCL 750.520b(1)(e) ("The actor is armed with a weapon") and (f) ("The actor causes personal injury

---

[3] Effective January 5, 2016, the Legislature amended the statute to require a 50-point score when "[a] victim was treated with sadism, torture, excessive brutality, or *similarly egregious* conduct designed to substantially increase the fear and anxiety of a victim suffered during the offense." MCL 777.37(1)(a) (emphasis added), as amended by 2015 PA 137. This amendment was made after defendant committed his offense, as well as after sentencing, and it therefore inapplicable. MCL 769.34(2); *People v Buehler*, 477 Mich 18, 24; 727 NW2d 127 (2007).

to the victim and force or coercion is used to accomplish sexual penetration.")  Importantly, "force or coercion" includes situations where "the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats."  MCL 750.520b(1)(f)(*ii*).  Employing the reasoning of *Hardy*, defendant could have accomplished his crime by simply threatening force or violence.  Thus, defendant's use of a dangerous weapon to attain J's compliance was conduct beyond that necessary to commit CSC-I.  In addition, defendant went a step above and beyond by removing the battery from J's cellular telephone, preventing her from calling for help.  And after completing the sexual assault, defendant held J prisoner longer than necessary.  J was afraid to leave because defendant was pacing back and forth, swinging a gun around, "ready for war," and threatening to harm J's family members.

The evidence supports the inference that defendant's use of a dangerous weapon and his conduct immediately following the sexual assault were "designed to substantially increase [J's] fear and anxiety," as well as to secure her silence.  Defendant had already demonstrated his physical ability to make good on his threat to cause additional harm to J or her relatives.  Accordingly, we discern no error in the trial court's scoring decision.

## D. ASSISTANCE OF COUNSEL

To merit a new trial (or resentencing) based on ineffective assistance of counsel, defendant must show that "(1) that defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that defense counsel's deficient performance so prejudiced the defendant that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Fonville*, 291 Mich App 363, 383; 804 NW2d 878 (2011), citing *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

The trial court clearly properly scored OV 1 and OV 7.  And again, we need not determine whether the court properly scored OV 4 because any potential error was harmless.  Failing to advance a meritless argument or to raise a futile objection does not constitute ineffective assistance of counsel.  *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).  Absent any showing of prejudice, resentencing is not required.

We affirm.


/s/ Peter D. O'Connell
/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra